
Neutral
As of: November 18, 2013 12:25 PM EST

## Seven Arts **Filmed Entm't, Ltd. v. Content Media Corp. PLC**

United States Court of Appeals for the Ninth Circuit

August 29, 2013, Argued and Submitted, Pasadena, California; November 6, 2013, Filed

No. 11-56759

**Reporter:** 2013 U.S. App. LEXIS 22517; 2013 WL 5928356

SEVEN ARTS FILMED ENTERTAINMENT LIMITED, an English corporation, Plaintiff-Appellant, v. CONTENT MEDIA CORPORATION PLC, an English corporation, Defendant, and PARAMOUNT PICTURES CORP., a Delaware corporation, Defendant-Appellee.

**Prior History:** [*1] Appeal from the United States District Court for the Central District of California. D.C. No. 2:11-cv-04603-ABC-FMO. Audrey B. Collins, District Judge, Presiding.
Seven Arts Pictures PLC v. Fireworks Entm't, Inc., 244 Fed. Appx. 836, 2007 U.S. App. LEXIS 19532 (9th Cir. Cal., 2007)

**Disposition:** AFFIRMED.

Case Summary

**Overview**
HOLDINGS: [1]-An untimely ownership claim barred a claim for copyright infringement where the gravamen of the dispute was ownership, at least where the parties were in a close relationship, and because it was apparent from the complaint that defendant clearly and expressly repudiated plaintiff's ownership of the copyrights more than three years before plaintiff brought suit, the district court properly dismissed the complaint as untimely under the Copyright Act's three-year statute of limitations in 17 U.S.C.S. § 507(b).

**Outcome**
Judgment affirmed.

**Counsel:** Neil Netanel, Los Angeles, California, argued the cause and Peter Hoffman, West Hollywood, California, filed the briefs for [*2] the plaintiff-appellant.

Joan Mack, Los Angeles, California, argued the cause and filed the brief for the defendant-appellee. With her on the brief were Jeanne A. Fugate, Los Angeles, California, and Matthew O'Brien, Los Angeles, California.

**Judges:** Before: Diarmuid F. O'Scannlain, Carlos T. Bea, and Morgan Christen, Circuit Judges. Opinion by Judge O'Scannlain.

**Opinion by:** Diarmuid F. O'Scannlain

Russo Decl. Ex. 4 p. 1

**Opinion**

O'SCANNLAIN, Circuit Judge:

We are invited to decide the ownership of copyrights in several motion pictures. The question is whether the three-year statute of limitations in the Copyright Act applies.

I

This appeal is the latest chapter in a decade-long quest by Seven Arts Filmed Entertainment Limited ("Seven Arts")[1] to establish ownership of copyrights in several motion pictures—as relevant here: *Rules of Engagement, An American Rhapsody, and Who is Cletis Tout?*.

On May 27, 2011, Seven Arts sued Paramount Pictures Corp. ("Paramount") and Content Media Corp. PLC ("Content") for copyright infringement, **[*3]** a declaration of ownership rights, and an accounting, seeking a declaration that neither Content, nor its predecessors-in-interest (collectively "CanWest"),[2] "is the owner or grantee" of rights in the films. Rather, Seven Arts claims that it is "the registered owner or assignee of the registered owner" of United States copyrights to the films. Seven Arts also alleges that Paramount is the licensee of certain distribution rights in and to the pictures, and that it has paid receipts from their distribution to Content, not Seven Arts, despite Seven Arts's demands.

Seven Arts voluntarily dismissed Content, deciding to pursue it in the High Court of England and Wales. Nonetheless, Seven Arts claimed a viable cause of action for copyright infringement against Paramount because of a summary judgment **[*4]** order it obtained in 2011 from the Superior Court of Justice in Ontario, Canada.

That Canadian action was first brought in 2003 against CanWest. In it, Seven Arts claimed co-ownership rights to the pictures stemming from a document referred to as the "Heads of Agreement" or "Master Structure Agreement." The case found its way to Canada because CanWest defended Seven Arts's first lawsuit—a 2002 action in the Central District of California—on the ground that the Heads of Agreement had a Canadian forum-selection clause. CanWest defended in Canada by denying that the Heads of Agreement was an enforceable contract.

While the Canadian action was pending, Seven Arts returned to the United States in 2005 and filed a second action in the Central District of California. Just as the instant 2011 action, the 2005 lawsuit alleged causes of action for copyright infringement, declaratory relief, and an accounting against CanWest. Unlike the 2002 action, which had alleged Seven Arts was a co-owner, the 2005 lawsuit claimed that Seven Arts was the sole owner of the disputed film rights. The new theory of ownership was that when CanWest denied the Heads of Agreement in Canada, Seven Arts obtained and **[*5]** exercised a right to "rescind any contracts which may have existed among the parties." Such contracts included: the Heads of Agreement in which Seven Arts's predecessor-in-interest had assigned all its rights to *Rules of Engagement* to Paramount's predecessor-in-interest; a 1999 agreement in which Seven Arts had assigned away its rights to *An American Rhap-*

---

[1] Except as necessary for clarity, this Opinion uses "Seven Arts" to describe the Plaintiff as well as its predecessors-in-interest: CineVisions, Stander Productions Ltd., Seven Arts Pictures PLC, and Seven Arts Pictures, Inc.

[2] According to the complaint, "Content is the assignee and/or licensee of all interests that Fireworks Entertainment, Inc., an Ontario, Canada corporation, Fireworks Pictures Releasing (U.S.) Inc., a California corporation, CanWest Entertainment Inc., an Ontario, Canada corporation, and CanWest Entertainment International Distribution, an Irish joint venture . . . purport to own in the Pictures."

*sody*; and a 2000 agreement concerning *Who Is Cletis Tout?*.

In August 2005, the district court granted CanWest's motion to stay the proceedings pending prosecution of the Canadian action. Seven Arts belatedly appealed that stay to this court, and we affirmed. See Seven Arts Pictures PLC v. Fireworks Entm't, Inc., 244 F. App'x 836 (9th Cir. 2007). In 2008, the district court dismissed the 2005 action with prejudice for failure to prosecute after issuing two prior warnings. Seven Arts appealed to this court, and we affirmed. See Seven Arts Pictures PLC v. Fireworks Entm't, Inc., 329 F. App'x 726 (9th Cir. 2009).

Seven Arts finally prosecuted its Canadian action and ultimately secured the February 2011 summary judgment order already mentioned. The Canadian proceeding was not adversarial, because the initially named defendants had entered [*6] bankruptcy and had not opposed the motion; so the Canadian court reviewed only the evidence presented by Seven Arts. Nonetheless, the Canadian order granted Seven Arts a declaration that it is and at all relevant times had been the owner of "copyrights registered and enforceable pursuant to the United States Copyright Act of 1976" for *An American Rhapsody* and *Who is Cletis Tout?*, and also that it had "exclusive rights" for international distribution of *Rules of Engagement*. The Canadian order further determined that Seven Arts had "granted no rights or interest in the Copyrights or the Copyrighted Works to any Defendant" and that therefore "the Defendants have infringed and continue to infringe the Plaintiffs' rights."

Seven Arts—with the summary judgment order in hand—returned to federal district court and filed this case, a near-duplicate of the 2005 lawsuit, except that Seven Arts sued Paramount for the first time and alleged that the Canadian summary judgment order established its ownership rights. Paramount moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6).³ On October 3, 2011, the district court dismissed the complaint with prejudice on the ground that [*7] Seven Arts's claim for copyright infringement against Paramount was barred by the Copyright Act's three-year statute of limitations, 17 U.S.C. § 507(b).

II

**HN1** We review the district court's dismissal of the complaint for failure to state a claim and the legal issues it presents de novo. See UMG Recordings, Inc. v. Shelter Capital Partners LLC, 718 F.3d 1006, 1014 (9th Cir. 2013). **HN2** A statute-of-limitations defense, if "apparent from the face of the complaint," may properly be raised in a motion to dismiss. Conerly v. Westinghouse Elec. Corp., 623 F.2d 117, 119 (9th Cir. 1980). **HN3** "We accept as true all well-pleaded allegations of material fact" but are not "required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Daniels-Hall v. Nat'l Educ. Ass'n, 629 F.3d 992, 998 (9th Cir. 2010).

III

**HN4** The Copyright Act of 1976 provides that all civil actions [*8] must be brought "within three years after the claim accrued." 17 U.S.C. § 507(b). When a claim accrues depends on the nature of the copyright claim.

**HN5** For ordinary claims of copyright infringement, each new infringing act causes a new claim to accrue; thus, we have held that "an action may be brought for all acts that accrued within

---

³ Content also moved to dismiss under Rule 12(b)(6) but, as previously mentioned, Seven Arts voluntarily dismissed Content before the district court ruled on Content's motion.

the three years preceding the filing of the suit." *Roley v. New World Pictures, Ltd.*, 19 F.3d 479, 481-82 (9th Cir. 1994).[4] By contrast, we have held "that claims of co-ownership, as distinct from claims of infringement," accrue only once, "when plain and express repudiation of co-ownership is communicated to the claimant, and are barred three years from the time of repudiation." *Zuill v. Shanahan*, 80 F.3d 1366, 1369 (9th Cir. 1996); *see also Aalmuhammed v. Lee*, 202 F.3d 1227, 1230-31 (9th Cir. 2000) (Where "creation rather than infringement is the gravamen of an authorship claim, the claim accrues on account of creation, not subsequent infringement, and is barred three years from 'plain and express repudiation' of authorship.").

**HN6** Copyright infringement claims have two basic elements: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361, 111 S. Ct. 1282, 113 L. Ed. 2d 358 (1991). In the ordinary infringement case, ownership is not in dispute, *Kwan v. Schlein*, 634 F.3d 224, 229 (2d Cir. 2011); rather, the dispute centers on the second prong—whether, for example, the copying was a "fair use,"[5] or whether the materials taken were "original," *see, e.g., Roley*, 19 F.3d at 480.

But this dispute is about ownership—Paramount concedes it is exploiting the pictures, but denies that Seven Arts owns the copyrights. That such is the nature of this dispute is apparent from the face of Seven Arts's complaint, which [*10] alleges that Seven Arts, not CanWest or Content, owned the copyrights, and that Paramount improperly paid royalties to CanWest or Content rather than Seven Arts.[6] We must decide, then, whether a claim for copyright infringement in which ownership is the disputed issue is time-barred if a freestanding ownership claim would be barred.

A

Although this is an issue of first impression in our circuit, we are guided by the Second and Sixth Circuits. Our sister circuits have held that, **HN7** where the gravamen of a copyright infringement suit is ownership, and a freestanding ownership claim would be time-barred, any infringement claims are also barred. See *Kwan*, 634 F.3d at 229-30; *Ritchie v. Williams*, 395 F.3d 283, 288 n.5 (6th Cir. 2005); [*11] *see also Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC*, 477 F.3d 383, 389-90 (6th Cir. 2007).[7] "When claims for both infringement and ownership are alleged," according to the Sixth Circuit, "the infringement claim is timely only if the corresponding ownership claim is also timely." *Roger Miller Music, Inc.*, 477 F.3d at 389-90. Or, as the Second Circuit puts it, "[w]here . . . the ownership claim is time-barred, and ownership is the dispositive issue, any attendant infringement claims must fail." *Kwan*, 634 F.3d at 230.

1

---

[4]   *See also* 3 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright*, § 12.05[B][1][b] (2011) (explaining that *Roley* "adopted a 'rolling' [*9] concept of looking back three years from the date of filing," an approach which "rejects the continuing wrong theory, whereby" damages would be available all the way back to the day the infringement started).

[5]   *E.g., SOFA Entm't, Inc. v. Dodger Prods., Inc.*, 709 F.3d 1273, 1276 (9th Cir. 2013) (involving "a copyright infringement suit over a seven-second clip of Ed Sullivan's introduction of the Four Seasons on *The Ed Sullivan Show*").

[6]   We need not consider Seven Arts's assertion that Paramount is precluded from disputing Seven Arts's ownership of the copyrights because it stood in privity with CanWest in the Canadian action. Both parties concede that the issue of "estoppel by privity" was not adjudicated by the district court and is not properly before us. Even if Seven Arts were ultimately to prevail on the merits of that theory, it would not prove that the gravamen of this dispute is something other than ownership.

[7]   Both circuits were, in turn, guided by *Zuill*. See *Kwan*, 634 F.3d at 230 ("Creation, rather than infringement, was the gravamen of plaintiffs' coownership claim, so the claim did not accrue upon subsequent publication." (quoting *Zuill*, 80 F.3d at 1371)); *Ritchie*, 395 F.3d at 288 n.5 (extending *Zuill*'s accrual upon "plain and express repudiation" rule "from co-authors to others in close relationships, such as those who transfer copyright ownership via contract").

2013 U.S. App. LEXIS 22517, *11

Our sister circuits' approach makes good sense—allowing infringement claims to establish ownership where a freestanding ownership claim would be time-barred would permit plaintiffs to skirt the statute of limitations **[*12]** for ownership claims and lead to results that are "potentially bizarre," 3 Nimmer & Nimmer, *Nimmer on Copyright*, § 12.05[C][3]. An alternative approach would allow plaintiffs who claim to be owners, but who are time-barred from pursuing their ownership claims forthrightly, simply to restyle their claims as "infringement" and proceed without restriction. Such would negate our reasoning in *Zuill*—

> It is inequitable to allow the putative co-owner to lie in the weeds for years after his claim has been repudiated, while large amounts of money are spent developing a market for the copyrighted material, and then pounce on the prize after it has been brought in by another's effort.

*80 F.3d at 1370-71*.

Still, Seven Arts urges us to create a circuit split by refusing to extend *Zuill*'s accrual-upon-express-repudiation rule from ownership claims among co-authors to infringement claims where the dispositive issue is ownership. To be sure, Seven Arts is correct that *Zuill* was a dispute between co-authors, who cannot sue one another for copyright infringement, whereas our sister circuits have extended *Zuill* to claims of sole authorship. Yet, as the leading copyright treatise explains, that is a distinction **[*13]** without a difference. *See* 3 Nimmer & Nimmer, *Nimmer on Copyright, § 12.05[C][2]* ("If *A* cannot be heard to claim belatedly that he co-authored a work with *B* twenty years ago, which would result in *A* owning 50% of the copyright, then all the moreso *C* must be barred from belatedly claiming that she solely authored a work on which *D* has been claiming authorship credit for twenty years, which would result in *C* owning 100% of the copyright.").

Relying on legislative history, Seven Arts maintains that the statute of limitations for declaratory-judgment actions should not be applied to claims for copyright infringement because Congress's intent in enacting the statute of limitations was to bar particular remedies, not extinguish any substantive rights. *See, e.g.*, S. Rep. 85-1014 (1957), *reprinted in* 1957 U.S.C.C.A.N. 1961, 1963 ("The committee wishes to emphasize that it is the committee's intention that the statute of limitations, contained in this bill, is to extend to the remedy of the person affected thereby, and not to his substantive rights."). The plaintiff in *Zuill* cited the same passage of legislative history. *80 F.3d at 1369 & n.1*. As in *Zuill*, the "legislative history does not speak **[*14]** to the issue" in this case. *Id.* at 1369.

We agree with our sister circuits' reasoning, and are unpersuaded by Seven Arts's criticism of it. Moreover, "the creation of a circuit split would be particularly troublesome in the realm of copyright." *Silvers v. Sony Pictures Entm't, Inc., 402 F.3d 881, 890 (9th Cir. 2005)* (en banc). Creating "[i]nconsistent rules among the circuits would lead to different levels of protection in different areas of the country, even if the same alleged infringement is occurring nationwide." *Id*. Such would contravene Congress's intent in revising the Copyright Act. *See Cmty. for Creative Non-Violence v. Reid, 490 U.S. 730, 749, 109 S. Ct. 2166, 104 L. Ed. 2d 811 (1989)* ("Congress' paramount goal in revising the 1976 Act [was] enhancing predictability and certainty of copyright ownership."); *Syntek Semiconductor Co. v. Microchip Tech. Inc., 307 F.3d 775, 781 (9th Cir. 2002)* ("Congressional intent to have national uniformity in copyright laws is clear."). We decline Seven Arts's invitation to create a circuit split.

2

Seven Arts contends that, even if we follow the Second and Sixth Circuits, our sister circuits' case-

law is inapposite because Paramount is a "putative downstream, third party licensee"[8] **[*15]** rather than a co-author or otherwise "in [a] close relationship[], such as those who transfer copyright ownership via contract," *Ritchie, 395 F.3d at 288 n.5*; *see also Kwan, 634 F.3d at 226-27* (holding that suit by editor of a book against book's publisher, who hired her, and author was barred by statute of limitations). Extending *Zuill*'s accrual rule to encompass claims against those who are not in a close relationship could introduce uncertainty into the enforcement of copyrights and require copyright holders to file suit against any third party that might be deemed to have repudiated the copyright owner's title.

We need not decide which rule applies to suits against unknown third parties. Paramount and Seven Arts's predecessors-in-interest were in the sort of "close **[*16]** relationship" envisioned by *Ritchie* and reflected in *Kwan*. Peter Hoffman, then-president of Seven Arts's predecessor-in-interest CineVisions, described the relationship in his affidavit filed in support of summary judgment in the Canadian action. CineVisions and Hoffman entered into a "first look" deal with Paramount in January 1998. Later that year, CineVisions and Fireworks, one of Content's predecessors-in-interest, "agreed to enter into an agreement for the financing, production, acquisition and distribution of theatrical motion pictures (the 'Venture') under and pursuant to [CineVisions's] 'first look' production arrangement with Paramount."

"Pursuant to the Venture . . . [CineVisions] obtained from Paramount the exclusive grant of all international distribution rights, i.e. theatrical, non-theatrical, video and television rights outside the United States and Canada . . . to the motion picture entitled *Rules of Engagement*," which "was the first of the major Paramount motion pictures acquired by [CineVisions] under the 'first look' arrangement with Paramount." Similarly, Hoffman "obtain[ed] an agreement with Paramount for the distribution of *American Rhapsody* **[*17]** in most territories." And, CineVisions "arranged several pre-sales for [*Who is Cletis Trout?*] and arranged for distribution of the picture in the United States through Paramount."

Of particular note, Hoffman, now Seven Arts's CEO and counsel in this appeal, personally signed and negotiated those contracts and agreements with Paramount. Seven Arts cannot claim ignorance about Paramount's interest in, and distribution of, the pictures during the statutory period.

B

Paramount plainly and expressly repudiated Seven Arts's copyright ownership more than three years before Seven Arts brought this suit. According to the complaint, Seven Arts's predecessors-in-interest "gave notice to Paramount in three letters dated January 20, 2005, March 18, 2005, and May 5, 2005 . . . that all sums due to the CanWest Parties with respect to the Pictures was [sic] and would become due to [Seven Arts's] Predecessors."

The January letter informed Paramount that "Seven Arts claims ownership of the Pictures," that "[CanWest] has no further right to distribute the Pictures or collect any sums due as respect to the Pictures," and therefore that "Seven Arts demands that Paramount pay all sums due with respect to such **[*18]** Pictures to Seven Arts and not to pay such sums to [CanWest] until resolution of the litigation currently pending in Canada." In March, Hoffman requested "Paramount to demand of CanWest production of [the appropriate] chain of title as a prerequisite to payment of

---

[8] Paramount disputes this characterization, claiming that it has validly registered copyrights to *An American Rhapsody* and *Who is Cletis Tout?* and that its German partner, MFP Munich Films, holds the copyright for *Rules of Engagement*. Furthermore, Paramount claims that it assigned the international distribution right for *Rules of Engagement* to Seven Arts's predecessor and was therefore "upstream" from Seven Arts.

2013 U.S. App. LEXIS 22517, *18

any future sums." By May, Hoffman had "read the documents" Paramount sent to him and found it "truly outrageous that CanWest would use these documents as chain of title."

Despite the letters, "Paramount failed and refused to comply with [Seven Arts's] Predecessors' demand." By choosing to continue paying royalties to CanWest and Content, rather than to Seven Arts's predecessors, as demanded, Paramount plainly and expressly repudiated Seven Arts's copyright ownership by 2005 at the latest. This action was filed over three years later, on May 27, 2011.

C

Seven Arts asserts that, even if its claim accrued in 2005 and is barred by the statute of limitations, it is entitled to equitable tolling because of some combination of the 2002 suit, the long-dormant 2003 Canadian action, or the 2005 stay order tolled its claim against Paramount. Such assertion borders on the frivolous.

Seven Arts admits, as it must, that it is not entitled [*19] to tolling on the basis of concealment or lack of knowledge. It has known about Paramount's distribution of the pictures from the first and has never, before this case, added Paramount as a defendant in any of its multifarious actions.

Furthermore, Seven Arts concedes that it cannot cite any case tolling the Copyright Act's statute of limitations by reason of a prior pending claim.[9] And Seven Arts points to no case holding that a plaintiff may rely on the filing of a separate action against a separate defendant to toll a subsequent copyright action against a new defendant.[10] We decline to hold so here, especially where Seven Arts offers no compelling reason for its failure to sue Paramount in any earlier action, or to bring suit within the statute of limitations.

IV

We join our sister circuits in holding that an untimely ownership claim will bar a claim for copyright infringement where the gravamen of the dispute is ownership, at least where, as here, the parties are in a close relationship. Because it is apparent from the complaint that Paramount clearly and expressly repudiated Seven Arts's ownership of the copyrights more than three years before [*21] Seven Arts brought suit, the district court properly dismissed.

**AFFIRMED**

---

[9] Seven Arts relies, as it did below, on two cases that "applied equitable tolling in the situation where . . . a bankruptcy petition erected an automatic stay under 11 U.S.C. § 362 which prevented the claimant from taking steps to protect her claim," *O'Donnell v. Vencor, Inc.*, 465 F.3d 1063, 1068 (9th Cir. 2006) (citing *Young v. United States*, 535 U.S. 43, 50-51, 122 S. Ct. 1036, 152 L. Ed. 2d 79 (2002)). In each of those cases, though, "the defendants" had "created [*20] the situation which impeded" the plaintiffs from pursuing their claims. *Id.*; *see also* Young, 535 U.S. at 50. Paramount did nothing to prevent Seven Arts from bringing suit in a timely fashion.

[10] Tellingly, Seven Arts's reply brief states "[i]ndeed,'s [sic] *central point is that* equitable tolling may be available *even if* the now affected party was *not* sued in the prior action . . . ." From context, Seven Arts appears to be relying on *Daviton v. Columbia/ HCA Healthcare Corp.*, which interpreted California's equitable tolling law and concerned the tolling effect of an administrative complaint for "the same wrong . . . *against the same defendant*," 241 F.3d 1131, 1133 (9th Cir. 2001) (en banc) (emphasis added); *see also* id. at 1138 ("Typically," under California law, "both claims name the same defendant.").