Christopher E. Hawk, OSB #061635
Gordon & Rees LLP
121 SW Morrison Street, Suite 1575
Portland, OR  97204
Tel: (503) 222-1075
Fax: (503) 616-3600
Email: chawk@gordonrees.com

Glenn Westreich (Pro Hac Vice)
Aimee Furness (Pro Hac Vice)
Haynes and Boone, LLP
2033 Gateway Place, Suite 300
San Jose, CA  95110
Tel: (408) 660-4151
Email: glenn.westreich@haynesboone.com
aimee.furness@haynesboone.com

Attorneys for AFD China Intellectual Property Law Office
and AFD China Intellectual Property LLC

## UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON
## PORTLAND DIVISION

| | |
|---|---|
| **AFD CHINA INTELLECTUAL PROPERTY LAW (USA) OFFICE, INC.,** an Oregon corporation,<br><br>     Plaintiff,<br><br>  -vs-<br><br>**AFD CHINA INTELLECTUAL PROPERTY LAW OFFICE,** a Chinese Corporation,<br><br>     Defendant,<br><br><br>**AFD CHINA INTELLECTUAL PROPERTY LLC**, a Maryland limited liability company,<br><br>     Counterclaim Plaintiff,<br><br>  -vs-<br><br>**LEI WANG, a/k/a LYNN WANG,**<br><br>     Third Party Counterclaim Defendant. | Case No.: 3:09-CV-1509-BR<br><br><br>**AFD CHINA'S AND AFD LLC'S PRE-TRIAL MEMORANDUM**<br><br>**(Filed Under Seal)** |

**AFD CHINA'S AND AFD LLC'S PRE-TRIAL MEMORANDUM**

# TABLE OF CONTENTS

I.  INTRODUCTION ............................................................................................. 1

II. ARGUMENTS AND AUTHORITIES...................................................... 1

    A.  AFD USA's registration does not create a "clear and convincing" burden on AFD China. ............................................................................................................... 1

    B.  The Court and Jury should consider AFD USA's agency relationship with AFD China. ............................................................................................................... 3

    C.  Outstanding Damages Issues. ................................................................... 4

        1.  AFD USA's Expert – Serena Morones – did not analyze AFD USA's damages................................................................................................ 4

        2.  AFD USA failed to segregate AFD China's profits attributable to infringement. .................................................................................... 5

            a.  International activity. .................................................................. 6

            b.  Clients attributable to AFD China alone.......................................... 6

            c.  Clients present at the time of termination. ..................................... 6

        3.  Ms. Morones' analysis of allegedly "missing" invoices lacks evidentiary foundation. .................................................................................... 7

        4.  AFD USA's proposed jury instructions related to damages should be rejected. ........................................................................................ 8

            a.  AFD USA's Proposed Instruction No. 34 "Damages – Proof." ..... 8

            b.  AFD USA's Instruction No. 63 "Trademark Damages-Defendant's Profits." .................................................................................. 8

    D.  AFD USA's proposed jury instruction on Intentional Infringement is improper... 9

    E.  AFD USA's Common Law Infringement instructions are improper.................... 10

    F.  Discussion of the Quality of AFD China's services is irrelevant. ........................ 11

    G.  AFD USA should not be permitted to raise arguments related to "trade names." 12

    H.  AFD USA's allegations of assignment of the AFD Mark are untimely. .............. 13

    I.  AFD USA's "tacking" arguments should be rejected........................................... 14

    J.  AFD USA's proposed statute of limitations argument is untimely and has already been rejected by the Court. ................................................................................ 15

    K.  Other Jury Instruction Issues. ............................................................. 16

        1.  AFD USA Instruction No. 5 "Two or More Parties – Different Legal Rights." ........................................................................................ 16

        2.  AFD China and AFD LLC's Instruction No. 20 "Judicial Notice."......... 16

        3.  AFD USA's Instruction No. 35 "Preliminary Instruction – Trademark." 17

        4.  AFD USA's Instruction No. 40 "Infringement – Elements . . ." .............. 18

**AFD CHINA'S AND AFD LLC'S PRE-TRIAL MEMORANDUM**

5.    AFD USA's Instruction No. 42 "Infringement – Elements . . ." .............. 18

6.    AFD USA's Instruction No. 57 "Defenses – Abandonment. . ." .............. 18

7.    AFD USA's Instruction No. 73 "Alter Ego." ........................................... 18

8.    Use of party neutral language in instructions related to claims asserted by both AFD China and AFD USA. ............................................................. 19

L.    Allegations regarding AFD China's document production are irrelevant and untimely. ................................................................................................. 19

M.    The Court should inform the jury of Ms. Wang's sanction. ................................. 23

**AFD CHINA'S AND AFD LLC'S PRE-TRIAL MEMORANDUM**

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Accuride Int'l, Inc. v. Accuride Corp.*,
    871 F.2d 1531 (9th Cir. 1989) ........................................................................12

*Barcamerica Int'l USA Trust v. Tyfield Importers, Inc.*,
    289 F.3d 589 (9th Cir. 2002) ..........................................................................11

*Classic Instruments, Inc. v. GGL Indus.*,
    73 Or. App. 732 ...............................................................................................10

*Comm. for Idaho's High Desert, Inc., v. Yost*,
    92 F.3d 814 (9th Cir.1996) ...............................................................................9

*Elder Mfg. Co. v. Int'l Shoe Co.*,
    194 F.2d 114, 92 USPQ 330 (CCPA 1952) ......................................................2

*Ernst Hardware Co. v. Ernst Home Center, Inc.*,
    134 Or. App. 560 (Or. Ct. App. 1995) .............................................................10

*Hydro-Dynamics, Inc. v. George Putnam & Co.*,
    811 F.2d 1470 (Fed. Cir. 1987) ...............................................................2, 3, 18

*Intel Corp. v. Terabyte Int'l, Inc.*,
    6 F.3d 614 (9th Cir. 1993) .................................................................................5

*Levi Strauss & Co. v. Blue Bell, Inc.*,
    778 F.2d 1352 (9th Cir.1985) ............................................................................2

*Levi Strauss & Co. v. GTFM, Inc.*,
    196 F.Supp.2d 971 (N.D. Cal. 2002) ..............................................................14

*Lindy Pen Co. v. Bic Pen Corp.*,
    982 F.2d 1400 (9th Cir. 1993) .......................................................................5, 9

*Mahroom v. Best W. Int'l, Inc.*,
    No. C 07-2351 JF (HRL), 2009 WL 2216578 (N.D. Cal. July 22, 2009) ................5

*Premier Dental Prods. v. Darby Dental Supply Co.*,
    794 F.2d 850 (3d Cir.1986)................................................................................3

*Rockwood Chocolate Co. v. Hoffman Candy Co.*,
    372 F.2d 552 (CCPA 1967) ...............................................................................2

*Rolex Watch, U.S.A., Inc. v. Michel Co.*,
    179 F.3d 704 (9th Cir. 1999) .............................................................................5

**AFD CHINA'S AND AFD LLC'S PRE-TRIAL MEMORANDUM**

*Rolley, Inc. v. Younghusband,*
    204 F.2d 209 (9th Cir.1953) ............................................................2

*Sengoku Works v. RMC Int'l,*
    96 F.3d 1217 (9th Cir.1996) .......................................................2, 3

*Stanspec Co. v. Am. Chain & Cable Co.,*
    531 F.2d 563, 189 USPQ 420 (CCPA 1976) ............................3

*Vuitton et Fils S.A. v. J. Young Enterps., Inc.,*
    644 F.2d 769 (9th Cir.1981) ............................................................2

*W. Brand Bobosky v. Adidas AG,*
    843 F. Supp. 2d 1134 (D. Or. 2011) .......................................12

*Wedgwood Homes, Inc. v. Lund,*
    294 Or. 493 (Or. 1983) ....................................................................10

**Treatises**

3 J. Thomas McCarthy, TRADEMARKS AND UNFAIR COMPETITION § 18:2 (4th ed.)....................13

3 J. Thomas McCarthy, TRADEMARKS AND UNFAIR COMPETITION § 17:26 (4th ed.) ..................14

**Statutes**

15 U.S.C. § 1055 ........................................................................15

15 U.S.C. §§ 1057(b) & 1115(a).............................................2

15 U.S.C. § 1060...........................................................................13

15 U.S.C. § 1117(a) ......................................................................9

15 U.S.C. § 1127........................................................................12, 15

**Other Authorities**

FED. R. EVID. 702.....................................................................7

AFD China Intellectual Property Law Office ("AFD China") and AFD China Intellectual Property LLC ("AFD LLC") submit this Pre-Trial Memorandum.

## I.    INTRODUCTION

In this case, a former agent of a Chinese law firm seeks to prevent that law firm from using its own name.  In April 2006, Ms. Wang – through her entity AFD China Intellectual Property Law (USA) Office ("AFD USA") – was considering terminating her relationship with AFD China.  Five months later, AFD USA, without telling AFD China, applied for the trademark "AFD."  After AFD China properly terminated its relationship with AFD USA and Ms. Wang due to problems with communication, AFD USA and Ms. Wang sat silent – no demand letters were sent and no requests that AFD China stop using the AFD Mark were made (even though AFD USA knew AFD China was continuing to use the mark in the United States). These five years of extremely expensive litigation only began when Ms. Wang lost her bid to recover any amounts from AFD China in the courts of the People's Republic of China.

AFD USA's causes of action in this matter have been whittled to one question – who owns the AFD Mark?  However, AFD USA continues to divert the Court's attention from this question with improper law and misleading issues.  The Court should now, before trial, limit those issues that are presented to the jury.

## II.    ARGUMENTS AND AUTHORITIES

### A.    AFD USA's registration does not create a "clear and convincing" burden on AFD China.

AFD USA seeks to have its fraudulent and improper registration of the AFD Mark be the "end all be all" of this matter.  However, the law does not support its argument.  Because the AFD Mark was challenged within five (5) years of registration, the mark is "contestable."  Under those circumstances, registration provides only prima facie evidence of the validity and

**AFD CHINA'S AND AFD LLC'S PRE-TRIAL MEMORANDUM**

ownership of the mark, subject to any limitations stated in the registration.[1]  The effect of a contestable registration is to shift the burden of proof of ownership and validity from the plaintiff to the defendant.  The defendant must rebut the presumption of plaintiff's exclusive right to use the trademark by a preponderance of the evidence.[2]  AFD USA repeatedly includes a "clear and convincing" standard in its proposed jury instructions.  To submit that standard would be error.

In addition, the presumption only arises as of the date of the application for the trademark.[3]  AFD USA applied to register the trademark on September 26, 2006.[4]  Therefore, there is no presumption that AFD USA owned the AFD Mark before September 26, 2006.

Further, any use or priority prior to the date sworn as "first use in commerce" must be shown, even by the party that registered the mark.  In this case, AFD USA swore that its date of first use was "[a]t least as early as 03/01/2005."[5]  Therefore, in order to prevail on a date any earlier than what it swore to in its application, AFD USA must prove that use by a "clear and convincing" standard.[6]  "The reason for such an increased evidentiary burden [for changing the

---

[1]*See* 15 U.S.C. §§ 1057(b) & 1115(a); s*ee also Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1354–55 (9th Cir.1985) (holding that registration constitutes prima facie evidence).

[2]*See Vuitton et Fils S.A. v. J. Young Enterps., Inc.*, 644 F.2d 769, 775 (9th Cir.1981) (the presumption of validity need not be rebutted by "clear and convincing" evidence; only a preponderance of the evidence is required).

[3]"[T]he registrant is granted a presumption of ownership, dating to the filing date of the application for federal registration. . . ." *Sengoku Works v. RMC Int'l*, 96 F.3d 1217, 1219–20 (9th Cir.1996) (citing *Vuitton*, 644 F.2d at 775–76; *Rolley, Inc. v. Younghusband*, 204 F.2d 209 (9th Cir.1953)).

[4]ECF No. 199-30, filed April 5, 2013.

[5]*Id.*

[6]*Hydro-Dynamics, Inc. v. George Putnam & Co.,* 811 F.2d 1470, 1743 (Fed. Cir. 1987) ("Where an applicant seeks to prove a date earlier than the date alleged in its application, a heavier burden has been imposed on the applicant than the common law burden of preponderance of the evidence."); *see Rockwood Chocolate Co. v. Hoffman Candy Co.*, 372 F.2d 552, 554 (CCPA 1967) ("proof of such earlier date must be clear and convincing"); *Elder Mfg. Co. v. Int'l Shoe Co.*, 194 F.2d 114, 118, 92 USPQ 330, 332 (CCPA 1952) (stating that "proof must be clear and

**AFD CHINA'S AND AFD LLC'S PRE-TRIAL MEMORANDUM**

date of earliest use], supported by common sense, is that a change of position from one 'considered to have been made against interest at the time of filing of the application' requires enhanced substantiation."[7]

Possession of a trademark registration does nothing more than shift the burden of proof in a trademark case. While AFD USA is certainly entitled to use its registration of the AFD Mark as some evidence of ownership, the Court should instruct the jury that such evidence is not conclusive.

**B.    The Court and Jury should consider AFD USA's agency relationship with AFD China.**

AFD China requests that the Court include instructions and verdict questions related to AFD USA's agency relationship with AFD China. AFD USA was an agent of AFD China. AFD USA repeatedly – in written communications to AFD China and to the clients – admitted this agency relationship. Indeed, the Cooperation Agreement *required AFD USA to inform the clients* of this relationship.[8] In essence, AFD USA was a distributor of AFD China's services. Under well-settled law, in these cases where there is no written agreement about who would own the mark, the Manufacturer/Principal is presumed to own the mark.[9] There are ways to overcome this presumption but the presumption itself should be submitted to the jury.[10] Contrary to AFD USA's assertion, the question of agency has always been part of this matter. For example, Defendants' Answer, Affirmative Defenses and Counterclaims asserted that "AFD

---

convincing").

[7] *Hydro-Dynamics*, 811 F.2d at 1473 (quoting *Stanspec Co. v. Am. Chain & Cable Co.*, 531 F.2d 563, 567, 189 USPQ 420, 424 (CCPA 1976)).

[8] ECF No. 199-14, filed April 5, 2013.

[9] *See Sengoku Works*, 96 F.3d at 1220–21; *Premier Dental Prods. v. Darby Dental Supply Co.*, 794 F.2d 850, 853–54 (3d Cir.1986).

[10] AFD China's Proposed Jury Instruction No. 44.

**AFD CHINA'S AND AFD LLC'S PRE-TRIAL MEMORANDUM**

China permitted AFD USA OFFICE to use the name 'AFD Intellectual Property Law (USA) Office' in the United States as an agent of AFD China" and that "[s]uch use . . . was limited to marketing or promoting the services of AFD China in the United States as a correspondent and/or agent of AFD China in the United States."[11]  These claims were reasserted in AFD China's live pleading.[12]  Further, the agency issue is included in the Pre-Trial Order.[13] Therefore, AFD China's instructions regarding AFD USA's role as AFD China's agent are proper.

### C.    Outstanding Damages Issues.

Several outstanding issues need to be resolved regarding the damage claims in this matter.  These issues include AFD USA's most recent expert, her failure to establish AFD China's profits attributable to the use of the AFD Mark, her analysis of allegedly "missing" invoices, and AFD USA's proposed jury instructions related to damages.

### 1.    AFD USA's Expert – Serena Morones – did not analyze AFD USA's damages.

Serena Morones – AFD USA's most recent expert – was not engaged as a damages expert.  Ms. Morones was simply engaged to quantify "gross revenues for AFD China related to invoices – invoices related to clients in the United States for a period of time as well as presented data that indicates there may be invoices that weren't produced."[14]  As further outlined in AFD

---

[11]ECF No. 8, filed May 3, 2010, ¶ 8.

[12]ECF No. 68, filed April 2, 2012, ¶ 8.

[13]ECF No. 298, filed February 21, 2014, pp. 11, 16 ("AFD China permitted AFD USA to use the name . . . for marketing and promoting AFD China's services." "From December 2004 until the termination of the Cooperation Agreement, use of the AFD Mark was on behalf of and controlled by AFD China.  AFD China and AFD LLC further allege that AFD USA and Ms. Wang were marketing agents for AFD China.")

[14]Deposition of Serena Morones, January 18, 2014, 25:18-26:16.  Excerpts of Ms. Morones' deposition are attached to the Declaration of Aimee Furness (the "Furness Dec."), filed

**AFD CHINA'S AND AFD LLC'S PRE-TRIAL MEMORANDUM**

China's Omnibus Motion in Limine, AFD China believes that Ms. Morones should not be referred to in the trial of this matter as a "damages expert."

### 2. AFD USA failed to segregate AFD China's profits attributable to infringement.

A plaintiff in a trademark infringement case may be entitled to recover the revenue received by the infringer that is ***attributable to use of the infringing mark*** less the costs needed to generate that revenue.[15] Ms. Morones was engaged solely "to conduct a financial analysis of agent fee revenue ***invoiced*** by [AFD China] to clients located in the United States."[16] As explained in further detail in AFD China's Omnibus Motion in Limine, Ms. Morones made no analysis of the revenue received by AFD China nor did she attempt to segregate revenue or profits attributable to the alleged trademark infringement. In particular, Ms. Morones included in her improper analysis (1) clients located outside the United States, (2) clients that are attributable, by Ms. Wang's own admission, to AFD China alone, and (3) clients who were present at the time of the termination of AFD China's and AFD USA's cooperation.

---

concurrently with this memorandum, as <u>Exhibit "C."</u>

[15]*Rolex Watch, U.S.A., Inc. v. Michel Co.*, 179 F.3d 704, 712 (9th Cir. 1999) (affirming the district court's denial of request for profits because plaintiff did not show with reasonable certainty defendant's gross sales from infringing products); *Intel Corp. v. Terabyte Int'l, Inc.*, 6 F.3d 614, 621 (9th Cir. 1993) ("Damages are typically measured by any direct injury which a plaintiff can prove, as well as any lost profits which the plaintiff would have earned but for the infringement."); *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1407-08 (9th Cir. 1993) (finding that the plaintiff's calculation of defendant's profits flawed because it failed to subdivide sales caused by infringement); *Mahroom v. Best W. Int'l, Inc.*, No. C 07-2351 JF (HRL), 2009 WL 2216578, at *10 (N.D. Cal. July 22, 2009) (Best Western introduced financial statements of alleged infringer but failed to explain the extent, if any, to which room sales were attributable to the continued use of its trademarks).

[16]ECF No. 275-5, filed December 20, 2013 (emphasis added).

**AFD CHINA'S AND AFD LLC'S PRE-TRIAL MEMORANDUM**

*a.    International activity.*

Ms. Morones' analysis explicitly includes clients of AFD China that are located outside of the United States.[17]  This Court cannot award United States trademark damages for foreign actions.  The jury should not be presented with that evidence.

*b.    Clients attributable to AFD China alone.*

Ms. Wang has admitted that many of AFD China's clients were clients prior to any cooperation between AFD China and AFD USA/Ms. Wang.  Further, clients were developed during the cooperation by AFD China alone.  Because these clients were well aware of AFD China prior to any involvement with AFD USA or Ms. Wang or were developed by AFD China alone, any profits attributable to those clients cannot be the result of any trademark infringement.  The jury should not be presented with that evidence.

*c.    Clients present at the time of termination.*

AFD China's clients at termination could not possibly be confused by use of the AFD Mark (and therefore are not properly included in the damage analysis) because they each received a letter notifying them of the termination.  Further, those clients were each asked to make a decision – either stay with Ms. Wang or go with AFD China.  That question was presented by ***Ms. Wang***, who expressly asked clients to "[g]ive clear instruction immediately whether you would like to stay with us or AFD Beijing."[18]  Ms. Wang then invited all of AFD China's clients to join her at Pacific China (then Peksung), her new law firm.  She specifically

---

[17]Excerpts from Schedule 3a of the November 5, 2013 Correction Letter Re: Expert Report of Serena Morones (the "3a Excerpts"), attached to the Furness Dec. as <u>Exhibit "E,"</u> pp. 19, 20, 21, 23 (items highlighted in yellow).  These are just a few examples of the errors in Ms. Morones report and should not be considered a complete sample.

[18]December 30, 2007 email from Lynn Wang to clients, attached to the Declaration of Aimee Furness (the "Furness Dec."), filed concurrently with this memorandum, as <u>Exhibit "F."</u>

**<u>AFD CHINA'S AND AFD LLC'S PRE-TRIAL MEMORANDUM</u>**

told those clients "should you allow *me* to continue managing your cases under Pacific China . . . [return a form and] we can forward to *AFD China*."[19] She went on to explain to the clients that "*my departure from AFD* coincided with Pacific China's plan to set up a US branch."[20]

Because Ms. Wang specifically identified AFD China as a different organization than herself or AFD USA to clients, those clients could not have been confused as a result of any use of the AFD Mark.

### 3.    Ms. Morones' analysis of allegedly "missing" invoices lacks evidentiary foundation.

Ms. Morones also attempts to opine about allegedly missing invoices.  However, her opinion on that matter lacks any factual foundation.  Ms. Morones utilized a database of documents originally started by AFD USA's prior expert, Darrell Dorrell.  This database cannot establish that AFD China's production is lacking because Mr. Dorrell's own February 21, 2012 report acknowledges that "[i]t is likely that some of the gaps [in the production] are related to non joint venture-related invoices not captured in our data set."[21]  Mr. Dorrell's lawyer further acknowledged to Ms. Morones that Mr. Dorrell did not enter *all of the invoices* produced by AFD China.[22]  Ms. Morones also admitted at her deposition that according to that communication, the database is not complete.[23]  Ms. Morones' determination of whether any of

---

[19]January 2, 2008 email from Lynn Wang to clients, attached to the Furness Dec. as Exhibit "G."
[20]*Id.*

[21]ECF No. 275-2, filed December 20, 2013, p. 24.  Further factual analysis of this argument is in Section L, herein.

[22]ECF No. 290-8, filed January 27, 2014.

[23]Deposition of Serena Morones, Furness Dec., Exhibit "C," 77:4-6.

**AFD CHINA'S AND AFD LLC'S PRE-TRIAL MEMORANDUM**

AFD China's invoices are "missing" will not assist the trier of fact to understand the evidence or to determine a fact in issue.[24]  Therefore, this analysis should be excluded.

        **4.**        **AFD USA's proposed jury instructions related to damages should be rejected.**

Many of AFD USA's proposed jury instructions related to damages do not properly state the law.  These instructions should not be provided to the jury.

        *a.*        *AFD USA's Proposed Instruction No. 34 "Damages – Proof."*

AFD USA's proposed instruction does not properly state the law.  The Model Instruction deals with injuries, mental distress, and other personal damages.[25]  AFD China believes that the specific trademark damage questions in the Model Instructions appropriately state the law and should be used in this matter.  AFD USA has adduced no evidence to support any actual damages in this matter and therefore, such an instruction should not be presented to the jury.

To the extent the Court is inclined to allow this duplicative and cumulative question to be presented to the jury, AFD China believes that AFD USA's request that the jury consider "profits" should contain the same qualifications as found in Instruction No. 64.  In addition, this instruction should be presented from both sides (using general terms such as "owner" and "competitor" instead of "plaintiff" and "defendant" as discussed in further detail below) since AFD China and AFD USA both have damage claims in this matter.

        *b.*        *AFD USA's Instruction No. 63 "Trademark Damages-Defendant's Profits."*

AFD China objects to AFD USA's proposed instruction.  The instruction limits damages only to the plaintiff in this matter.  The Court should submit the instruction neutrally since both parties have damage claims.  In addition, AFD USA's instruction does not include any language

---

[24]Fed. R. Evid. 702.

[25]*See* Model Instruction No. 5.2.

regarding possible engagement for reasons other than the use of the AFD Mark. The Model Instructions specifically state: "The defendant may also raise a defense that the purchasers bought goods bearing the infringing mark for reasons other than the appeal of the mark, and that the infringement had no cash value in sales made by the defendant. If such a defense is raised, an appropriate instruction should be drafted." [26] AFD China believes its Instruction No. 64 is that "appropriate instruction." AFD China's instruction further cautions the jury against awarding double recovery.

AFD USA also argues that AFD China did not present any evidence of its expenses that should be deducted. However, AFD China did present evidence of expenses in April 2012 – Bates labeled AFDCH 170959. Mr. Dorrell's opinion relied on an estimate of future, on-going revenues (he did not analyze the entirety of AFD China's invoice production). AFD China's expert, rebutting Mr. Dorrell's opinions, too relied on actual expenses through 2010 and estimated the remainder (a parallel analysis to Mr. Dorrell's). When AFD USA substituted Ms. Morones in as its expert and she issued a new opinion (without using estimates and based solely on invoices), Mr. Hansen and AFD China updated the expense items rather than relying on estimates. That type of supplementation is entirely proper where, as here, the entire damage model was wholly revised by AFD USA.

### D.    AFD USA's proposed jury instruction on Intentional Infringement is improper.

Intentional infringement carries a connotation of deliberate intent to deceive. Courts generally apply forceful labels such as "deliberate," "false," "misleading," or "fraudulent" to conduct that meets this standard.[27] These terms are especially true in this case where the mark at

---

[26]Model Instruction No. 15.26.

[27]*Lindy Pen*, 982 F.2d at 1406; s*ee also Comm. for Idaho's High Desert, Inc*., *v. Yost*, 92 F.3d

**AFD CHINA'S AND AFD LLC'S PRE-TRIAL MEMORANDUM**

issue is AFD China's **name.** Simply presenting AFD USA's proposed instruction on intentional infringement[28] would be error when it does not define and use the terms so often seen in case law: deliberate, false, misleading, malicious, or fraudulent.

### E.     AFD USA's Common Law Infringement instructions are improper.

AFD USA's proposed language in its jury instruction related to common law trademark infringement improperly cites requirements under Oregon State *registration* law, not the common trademark law.[29] The statute cited by AFD USA does not deal with common law ownership and specifically states that "[t]he provisions of this chapter do not adversely affect the rights or the enforcement of rights in marks or trade names acquired in good faith at any time at common law."[30] AFD USA did not register its alleged mark in Oregon. Therefore, any application of Oregon law related to state-registered trademarks is irrelevant and should be rejected.

Oregon case law regarding common law trademark infringement notes that a trademark becomes protectable when the alleged owner demonstrates positive association in the minds of consumers between its name and its product or services.[31] Such association is established with the "geographic region" of the owner's business, and is not necessarily confined to within the state of Oregon.[32] Based on the broad language of the Oregon cases, it does not follow that a

---

814, 825 (9th Cir.1996) (noting that the term "exceptional" in 15 U.S.C. § 1117(a) for purposes of imposing attorney's fees generally means the infringement was "malicious, fraudulent, deliberate or willful") (citing *Lindy Pen*, 982 F.2d at 1408).

[28]AFD USA's Proposed Jury Instruction No. 66.

[29]AFD USA's Proposed Jury Instruction No. 47.

[30]See Or. Rev. Stat.  647.017(a).

[31]See *Ernst Hardware Co. v. Ernst Home Center, Inc.,* 134 Or. App. 560 (Or. Ct. App. 1995) (citing *Wedgwood Homes, Inc. v. Lund*, 294 Or. 493 (Or. 1983)).

[32]*Id*; *see also Classic Instruments, Inc. v. GGL Indus.*, 73 Or. App. 732, 738 (Or. Ct. App. 1985

**AFD CHINA'S AND AFD LLC'S PRE-TRIAL MEMORANDUM**

party is restricted to the exclusive use of a mark within Oregon to establish a protectable common law right in the state as AFD USA alleges.

Further, AFD USA's proposed submission of instructions regarding common law trademark infringement is lacking many of the required elements. Therefore, AFD USA's proposed instructions on common law trademark infringement should be rejected.

### F. Discussion of the Quality of AFD China's services is irrelevant.

AFD USA has indicated through its proposed witness list that it seeks to elicit testimony regarding the quality of AFD China's legal services. Such testimony is irrelevant. The quality of goods or services provided is not an element of trademark infringement (federal or common law). The only issue of "quality" at dispute is AFD China's allegation that AFD USA abandoned the AFD Mark by failing to exercise "quality control" of the mark. Uncontrolled or "naked" licensing of a trademark may result in the trademark ceasing to function as a symbol of quality.[33] Therefore, when the owner of a mark fails to exercise adequate quality control over a licensee, a court may find that the trademark owner abandoned the trademark and is estopped from asserting rights to the trademark in an infringement suit.[34] The Ninth Circuit has previously found naked licensing to void a trademark registration when a party allowed another party to use its mark without any express contractual rights to control the use of the mark or to inspect the quality of the goods provided under the mark.[35]

---

(stating that an inherently distinctive mark allows protection immediately upon adoption and use); *Wedgwood*, 294 Or. at 503 (involving a survey of the general public in the geographical region of plaintiff's business and showing its name possessed a distinctive associational value with its product among "a significant percentage of the consuming public").

[33]*Barcamerica Int'l USA Trust v. Tyfield Importers, Inc.*, 289 F.3d 589, 596 (9th Cir. 2002).

[34]*Id.* at 596.

[35]*Id.*

**AFD CHINA'S AND AFD LLC'S PRE-TRIAL MEMORANDUM**

At issue in this matter is not which party can best serve its clients but a dispute over who owns the AFD Mark.  AFD China contends that AFD USA did not properly maintain control of the quality of the services provided under the AFD Mark it alleges it owns.  The issue of quality will simply confuse or mislead the jury and could be prejudicial to AFD China.  Therefore, the Court should not permit any testimony regarding the quality of AFD China's services.

**G.     AFD USA should not be permitted to raise arguments related to "trade names."**

For the first time in its proposed jury instructions, AFD USA presents instructions related to use of a trade name.[36]  Trade names are symbols used to distinguish companies, partnerships and businesses, and symbolize the reputation of a business as a whole.[37]  The Lanham Act defines trade names as "individual names and surnames, firm names and trade names" used to identify a party's business or vocation.[38]  A trademark identifies and distinguishes a company's goods and services, whereas a trade name represents the reputation of a business as a whole.[39]  While the same general principals apply to trade name or service mark infringement, they are separate theories.

Nowhere in the 5 years of litigation has AFD USA alleged anything related to a trade name.  While AFD USA cites the Pre-Trial Order, that Order contains no such reference. The paragraph cited by AFD USA only discusses trademarks and potential confusion.  In *Bobosky*, the District of Oregon found that because the plaintiff had never alleged or pled anything related

---

[36]AFD USA's Proposed Jury Instruction Nos. 49 and 50.

[37]*Accuride Int'l, Inc. v. Accuride Corp.*, 871 F.2d 1531, 1534 (9th Cir. 1989).

[38]*See W. Brand Bobosky v. Adidas AG*, 843 F. Supp. 2d 1134, 1147 (D. Or. 2011) (citing 15 U.S.C. § 1127).

[39]*Accuride,* 871 F.2d at 1534, 1536.

**AFD CHINA'S AND AFD LLC'S PRE-TRIAL MEMORANDUM**

to a trade name, such a claim could not prevent summary judgment under the Lanham Act.[40] The same is true in this case: because AFD USA has never made any claims related to trade names, it cannot do so at this late stage of the litigation.

The same is true of AFD USA's proposed common law trade name instruction. Because AFD USA has made no previous common law allegations related to trade names, the Court should not entertain such allegations now.[41] AFD USA's Proposed Instruction Nos. 49 and 50 are therefore improper in this matter. While the Ninth Circuit Manual of Model Jury Instructions (the "Model Instructions") state that a trade name and trademark are properly analyzed separately, that is not the case when one of the claims was never pled. AFD USA is simply trying to get two shots at collecting from AFD China. The Court should therefore reject AFD USA's Proposed Instruction Nos. 49 and 50.

**H.    AFD USA's allegations of assignment of the AFD Mark are untimely.**

Without citing any law for the proposition, AFD USA now alleges that there was/is an assignment of the AFD Mark in this matter. Further, AFD USA's verdict form presents a question to the jury about the value of that assignment and whether or not the assignment was accompanied by consideration.

There has been no allegation or proof of a trademark assignment in this matter. In a case brought under the Lanham Act, a signed writing is necessary for an assignment to be valid.[42] Further, a trademark alone may not be assigned. The goodwill of the business must go along

---

[40]843 F. Supp. 2d at 1147.

[41]Furthermore, the Oregon Statute cited by AFD USA relates to Oregon state *registration* – which there is no evidence of in this matter.

[42]15 U.S.C. § 1060.

**AFD CHINA'S AND AFD LLC'S PRE-TRIAL MEMORANDUM**

with it – without business, there is no trademark.[43]  There has been no writing produced by either

party that shows an assignment of a trademark or the goodwill of the business.  Therefore, it is

improper to submit AFD USA's Proposed Instruction No. 45 to a jury.

I.      **AFD USA's "tacking" arguments should be rejected.**

Tacking has never been formally pled or alleged in this matter.  It was not included in this

Court's Pre-Trial Order.  Therefore, its inclusion in AFD USA's proposed jury instructions is

improper.[44]

Even if such an allegation was not untimely, there is insufficient evidence to support such

an allegation.  "Tacking" occurs when a trademark owner introduces a **new** mark and tries to

obtain priority over a rival user of a **similar** mark by relating back ("tacking on") the new mark

to its prior registered mark.[45]  There are not two marks in this matter.  The only mark disclosed

as relevant by any party in this matter is the AFD Mark.  AFD USA attempts to argue that in

2004, Ms. Wang, while with ANSEN and before her association with AFD China, "used" the

AFD Mark.  As with all of AFD USA's "use" in this matter, that use was on AFD China's

behalf.  Ms. Wang testified:

> Q.      So, before this date [December 15, 2004] do you think you had any other
>          kind of official relationship with AFD China Intellectually – Intellectual
>          Property Law Office?
>
> A.      Can you define "official."
>
> Q.      No.
>
> A.      Before this date, I send them work. . . . Send them the payment.[46]

---

[43]3 J. Thomas McCarthy, TRADEMARKS AND UNFAIR COMPETITION § 18:2 (4th ed.).

[44]AFD USA's Proposed Jury Instruction No. 51.

[45]3 McCarthy on Trademarks § 17:26; *Levi Strauss & Co. v. GTFM, Inc.*, 196 F.Supp.2d 971, 984 (N.D. Cal. 2002).

[46]Deposition of Lynn Wang, December 15, 2011, 211:13-21.  Excerpts from Ms. Wang's

**AFD CHINA'S AND AFD LLC'S PRE-TRIAL MEMORANDUM**

AFD USA did not exist at that time. Even if the Court were to believe that Ms. Wang's use should be "tacked" it would only be tacked for Ms. Wang – AFD USA was not created until 2005.

The evidence AFD USA seeks to present on tacking is Ms. Wang telling her ANSEN customers that she will soon join a different Chinese law firm – AFD China. That is not "use" as defined for trademark law and it certainly does not fall into the very limited tacking doctrine. Use must be by the owner. Any use prior to AFD USA's incorporation would not inure to AFD USA's benefit. Ms. Wang's use at that point, and indeed, AFD USA's use at any point prior to termination was as a related company to AFD China.[47] As AFD China has alleged, any use by AFD USA was controlled by AFD China both as it relates to the mark (web design, advertising) and the actual work performed (AFD China controlled the nature and quality of the services).[48]

Because AFD USA's tacking argument is untimely, and because there is insufficient evidence to support such an argument, AFD USA should not be permitted to allege tacking at trial.[49]

J.    **AFD USA's proposed statute of limitations argument is untimely and has already been rejected by the Court.**

AFD China has repeatedly outlined its arguments against the inclusion of this defense in this matter. See ECF Nos. 267 and 287, which are expressly incorporated herein by reference.

---

deposition are attached to the Furness Dec. as Exhibit "A."

[47] 15 U.S.C. § 1055.

[48] 15 U.S.C. § 1127.

[49] AFD USA's Proposed Jury Instruction No. 51.

**AFD CHINA'S AND AFD LLC'S PRE-TRIAL MEMORANDUM**

In addition, the Court has ruled that AFD USA may not present this defense.[50]  Therefore, AFD China objects to the inclusion of this defense in the jury instructions or verdict form.[51]

AFD China further objects that AFD USA's proposed instruction is improper.  It presumes a two-year statute of limitations when AFD USA's Motion for Leave to File Amended Answer stated that the statute of limitations was three years.[52]  Furthermore, AFD USA's proposed instruction comes from the Oregon state model instructions related to the discovery rule, which AFD China has not pled (and has had no reason to plead due to the lack of statute of limitations for trademark infringement claims).  The instruction is non-sensical and should be rejected.

### K.   Other Jury Instruction Issues.

AFD China also submits the following objections to AFD USA's proposed jury instructions.

#### 1.   AFD USA Instruction No. 5 "Two or More Parties – Different Legal Rights."

AFD China objects to this instruction in the context of this matter.  At issue in this litigation is the trademark ownership of a single mark – AFD.  The rights of the parties should not be considered separately.  AFD China believes it owns the AFD Mark while AFD USA contests that belief (and vice versa).

#### 2.   AFD China and AFD LLC's Instruction No. 20 "Judicial Notice."

The parties filed two sets of "Agreed Facts" in this matter.  In the "Second Joint Statement of Agreed Facts" Docket Number 195 filed March 22, 2013, AFD USA agreed that

---

[50]ECF No. 292, entered January 28, 2014.

[51]AFD USA's Propose Jury Instruction No. 74.

[52]*See* Plaintiff's Memorandum of Points and Authorities in Support of Motion for Leave to File First Amended Answer to Defendants' Counterclaims, ECF No. 281, filed January 10, 2014, p. 4.

**AFD CHINA'S AND AFD LLC'S PRE-TRIAL MEMORANDUM**

"[a]s early as December 8, 2004, AFD China was using 'AFD China' on its website." That fact has been unequivocally admitted by AFD USA. AFD USA's agreement is a judicial admission and cannot now be relitigated almost a year later. This Court should instruct the Jury that this fact is accepted as true.

### 3. AFD USA's Instruction No. 35 "Preliminary Instruction – Trademark."

AFD USA has released all claims against AFD LLC and dismissed all claims against AFD LLC with prejudice.[53] Therefore, the inclusion of AFD LLC in the first sentence of this instruction is improper.

AFD China's objection to the assignment language contained in this instruction is more fully briefed above at Section D.

The paragraph on "Trademark Registration" – while, generally, a correct statement of the law – is prejudicial in this context. AFD China proposes that such information, along with the challenge regarding the registration, be included as outlined in Model Instruction 15.7 (see AFD China's Proposed Instruction No. 41).

AFD USA has also included an incorrect burden of proof. AFD China is not required to show that "it is the rightful owner of the trademark" by clear and convincing evidence. See Section A above.

AFD China further believes that the "Burdens of Proof" section should explain the basis for the claims and defenses as outlined in the Model Instructions and demonstrated in AFD China's Proposed Instruction No. 37.

---

[53]ECF No. 52, entered January 13, 2012.

**AFD CHINA'S AND AFD LLC'S PRE-TRIAL MEMORANDUM**

###### 4.    AFD USA's Instruction No. 40 "Infringement – Elements . . ."

AFD China believes that its Proposed Instruction No. 41 is the proper instruction.  AFD USA's instruction includes a discussion of validity – which is not in dispute in this case.  AFD China's instruction is more detailed and a proper statement of the law and is supported by Model Instruction No.15.7 and the case law cited in that instruction's comments.

###### 5.    AFD USA's Instruction No. 42 "Infringement – Elements . . ."

AFD China believes that its Proposed Instruction No. 43 is the proper instruction.  AFD China also believes that the "clear and convincing" standard will apply to any use of the AFD Mark by AFD USA earlier than March 1, 2005 (as explained above in Section A).[54]  AFD China believes that it would be error not to present that instruction to the jury.

###### 6.    AFD USA's Instruction No. 57 "Defenses – Abandonment. . ."

AFD China believes that the abandonment question needs to be more fully fleshed out as outlined in AFD China's Proposed Instruction No. 58.  AFD China's instruction is supported by Model Instruction No. 15.20.  AFD USA's instruction ignores AFD China's claim that AFD USA failed to exercise quality control over the services sold under the mark.  AFD China further believes that the jury needs to be instructed on what is "use" under the law in this jurisdiction.

###### 7.    AFD USA's Instruction No. 73 "Alter Ego."

AFD USA's instruction does not describe the "improper conduct" required for an alter ego finding.  AFD China believes that instruction is in error.  AFD China's Proposed Instruction No. 72 describes that conduct and should be submitted to the jury.

---

[54]*Hydro-Dynamics,* 811 F.2d at 1473 (Fed. Cir. 1987) ("Where an applicant seeks to prove a date earlier than the date alleged in its application, a heavier burden has been imposed on the applicant than the common law burden of preponderance of the evidence.").

**AFD CHINA'S AND AFD LLC'S PRE-TRIAL MEMORANDUM**

### 8. Use of party neutral language in instructions related to claims asserted by both AFD China and AFD USA.

AFD USA and AFD China assert similar claims against each other, including 1) a declaratory judgment regarding ownership of the AFD Mark, 2) Lanham Act Unfair Competition, and 3) Common Law Trademark Infringement. However, for many of the claims shared by both parties, AFD USA's proposed instructions utilize terms such as "plaintiff" and "defendant," which may confuse jurors and cause them to believe that only plaintiff AFD USA has affirmative claims in this matter. AFD China proposes that the instructions use "party-neutral" terms such as "owner" and "competitor" for any claims that both parties are alleging.

### L. Allegations regarding AFD China's document production are irrelevant and untimely.

AFD USA should not be allowed to allege that AFD China's production is "incomplete." Document production is complete and has been complete since February 7, 2013. AFD USA has not addressed the issue with the Court prior to the discovery deadline and should be prohibited from mentioning its far-fetched theory to the jury – both in argument and through either Ms. Wang (who would have no personal knowledge of the issue because all invoices have been marked "Attorney's Eyes Only") or Ms. Morones.

A brief review of the actual documents in this matter show that AFD USA's claim is a red-herring.

_Ms. Morones ignored cases transferred to Ms. Wang to Pacific China or Peksung._

Multiple cases that Ms. Morones alleges are missing were actually transferred by AFD China to one of Ms. Wang's later partners. For example, on January 9, 2008, John Branch, the responsible attorney, directed AFD China to transfer the following cases to **_Ms. Wang at Pacific_**

---

**AFD CHINA'S AND AFD LLC'S PRE-TRIAL MEMORANDUM**

*China*:  PCT/US2004/012545, PCT/IB2005/001718, and PCT/US2005/034622.[55]  Yet, Ms. Morones and AFD USA argue that "invoices would be expected to exist" following that transfer.[56]  For case numbers PCT/US2004/013961,[57] PCT/US2005/004889,[58] and PCT/US2005/042661,[59] the clients also transferred their cases to Pacific China.  No further invoices would be issued from AFD China after the transfer of the case to Ms. Wang.  Other documents supporting these, and other transfers, can be located in a document ***produced by AFD USA's former expert***, Mr. Dorrell, titled:  "Retained Clients."  Ms. Wang's Peksung is likely issuing those invoices and receiving that revenue.

Ms. Morones identifies Grigoriy Epshteyn as another client whose invoices have not been produced.  Ms. Wang's Peksung has issued him at least seven invoices for the same CN Filing Number reference that Ms. Morones complains AFD China failed to produce invoices.[60]  For AFD USA and Ms. Wang to complain to this Court that AFD China did not produce invoices related to cases that Ms. Wang is now responsible for at Peksung demonstrates the absurdity of AFD USA's argument.

<u>*Ms. Morones ignored documents demonstrating that clients decided to "drop the case."*</u>

For case number PCT/US2004/009181, Ms. Morones again speculates that "invoices would be expected to exist."  However, Ms. Morones did not take into consideration that the

---

[55]Transfer requests from clients, attached to the Furness Dec. as <u>Exhibit "H,"</u> pp. 1-3.

[56]3a Excerpts, Furness Dec., <u>Exhibit "E,"</u> pp. 9, 11 (relevant portions underlined in blue).

[57]Furness Dec., <u>Exhibit "H,"</u> pp. 4-5; 3a Excerpts, Furness Dec., <u>Exhibit "E,"</u> p. 2 (relevant portions underlined in blue).

[58]Furness Dec., <u>Exhibit "H,"</u> p. 9; 3a Excerpts, Furness Dec., <u>Exhibit "E,"</u> p. 7 (relevant portion underlined in blue).

[59]Furness Dec., <u>Exhibit "H,"</u> pp. 6-8; 3a Excerpts, Furness Dec., <u>Exhibit "E,"</u> p. 13 (relevant portions underlined in blue).

[60]Furness Dec., <u>Exhibit "M."</u>

**AFD CHINA'S AND AFD LLC'S PRE-TRIAL MEMORANDUM**

client "decided to drop this case" in April 2006, long before the termination of AFD USA.[61]  The same is true for case number PCT/US2004/026900 – the client told Ms. Wang to cease work on the matter in May 2007.[62]

*Ms. Morones either ignores or misses invoices that AFD China produced in this matter.*

AFD USA and Ms. Morones also overlooked produced invoices.  For example, case number PCT/US2004/013277 is in the "no invoices produced" category[63] – however, a September 9, 2008 invoice is Bates labeled AFDCH 153784 and was produced to AFD USA in June 2011.[64]  For case number PCT/US2005/015920, Ms. Morones identifies a U.S. law firm as the U.S. Agent and alleges that AFD China failed to produce invoices related to this matter.[65]  In fact, at least two 2009 invoices were produced:  AFDCH 169950 and AFDCH 170882.[66]  Both show that the referring attorney is actually located in the United Kingdom, not the United States. Case number PCT/EP2006/000601 suffers a similar defect.[67]  At least two 2009 invoices were produced:  AFDCH 170903 and AFDCH 170258.[68]  The case also has a United Kingdom based referring attorney.

---

[61]April 5, 2006 email, Furness Dec., Exhibit "N."

[62]May 18, 2007 email, Furness Dec., Exhibit "O."

[63]3a Excerpts, Furness Dec., Exhibit "E," p. 1 (relevant portion highlighted in yellow).

[64]AFD China Invoices, attached to the Furness Dec. as Exhibit "I," p. 1.

[65]3a Excerpts, Furness Dec., Exhibit "E," p. 9 (relevant portion highlighted in yellow).

[66]Furness Dec., Exhibit "I," pp. 2-3.

[67]3a Excerpts, Furness Dec., Exhibit "E," p. 16 (relevant portion highlighted in yellow).

[68]Furness Dec., Exhibit "I," pp. 4-5.

**AFD CHINA'S AND AFD LLC'S PRE-TRIAL MEMORANDUM**

*Mr. Dorrell's analysis is flawed and Ms. Morones relies on it.*

Mr. Dorrell's analysis was flawed – he either made multiple mistakes or was not provided with all of AFD China's production.[69]  Ms. Morones relies on Mr. Dorrell's work and therefore her analysis is also flawed.  For example, Mr. Dorrell produced a document called "Gap Detection."[70]  The largest single gap he alleges includes 180 invoices.[71]  However, AFD China produced those invoices (save three) as Bates labels AFDCH 153692 through AFDCH 153860[72] and AFDCH 153454 through AFDCH 153460[73] in June 2011, four months before Mr. Dorrell's original report in this dispute.  As another example, on page 1 of Mr. Dorrell's Gap Detection, in the first five entries, he alleges that out of the first 30 invoices for 2008, eight (26%) are missing.  However, all of those documents were produced and Mr. Dorrell **had those documents**.  In a .pdf document titled "Invoices_4.2" those documents can be found on pages 889-915.  Mr. Dorrell's file titled "Invoices_4.2" is first referenced in his February 21, 2012 report.[74]  Again, AFD USA's complaint about missing invoices or information is not borne out by the facts.

---

[69]AFD China objects to any reference to Mr. Dorrell or his work since AFD USA has withdrawn him as an expert in this matter.

[70]Furness Dec., Exhibit "J."

[71]*Id.* pg. 11.

[72]Furness Dec., Exhibit "K."

[73]Furness Dec., Exhibit "L."

[74]AFD China has not undertaken the Herculean task of matching all of Dorrell's allegedly missing invoices (1) with the documents he produced in support of his reports or (2) documents AFD China produced.  As outlined here and upon a very cursory review, nearly all of the allegedly missing documents have been produced and, again on cursory review, for the larger grouping of allegedly missing documents, all but the group of 180 have been found in Mr. Dorrell's documents.

**AFD CHINA'S AND AFD LLC'S PRE-TRIAL MEMORANDUM**

AFD USA's allegations regarding "missing invoices" is at best the result of sloppy case management or at worst a red herring meant to color the Court's and the jury's impression of AFD China.  The Court should not allow such issues to be discussed at trial.

**M.      The Court should inform the jury of Ms. Wang's sanction.**

AFD China's Proposed Instruction No. 21 relates to impeachment evidence and permits the jury to consider evidence that a witness has previously lied under oath.  On January 11, 2013, the Court found that Ms. Wang misrepresented to the Court that she had no knowledge of the arbitration clause in the Cooperation Agreement when, in fact, she did.  The Court admonished Ms. Wang to ensure that any future representations are true and accurate.  The Court should inform the jury of this sanction so the jury can weigh her testimony at trial against her prior misrepresentations.

Dated: March 7, 2014                              /s/ Aimee Furness
                                                  Christopher E. Hawk, OSB #061635
                                                  Gordon & Rees LLP
                                                  121 SW Morrison Street, Suite 1575
                                                  Portland, Oregon 97204

                                                  Glenn Westreich (Pro Hac Vice)
                                                  Aimee Furness (Pro Hac Vice)
                                                  Haynes and Boone, LLP
                                                  2033 Gateway Place, Suite 300
                                                  San Jose, California 95110

                                                  ATTORNEYS FOR AFD CHINA
                                                  INTELLECTUAL PROPERTY LAW
                                                  OFFICE

**AFD CHINA'S AND AFD LLC'S PRE-TRIAL MEMORANDUM**

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that a true and correct copy of AFD China's and AFD LLC's Pre-Trial Memorandum has been served on all counsel of record, as indicated below, on this 7th day of March, 2014.

Jack Russo                                          Via Email
Ansel Halliburton
Computerlaw Group LLP
401 Florence Street
Palo Alto, California 94301


/s/ Aimee M. Furness
Aimee M. Furness