Christopher E. Hawk, OSB #061635
Gordon & Rees LLP
121 SW Morrison Street, Suite 1575
Portland, OR 97204
Tel: (503) 222-1075
Fax: (503) 616-3600
Email: chawk@gordonrees.com

Glenn Westreich (Pro Hac Vice)
Aimee Furness (Pro Hac Vice)
Haynes and Boone, LLP
2033 Gateway Place, Suite 300
San Jose, CA 95110
Tel: (408) 660-4151
Email: glenn.westreich@haynesboone.com
        aimee.furness@haynesboone.com

Attorneys for AFD China Intellectual Property Law Office
and AFD China Intellectual Property LLC

## UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON
## PORTLAND DIVISION

| | |
|---|---|
| **AFD CHINA INTELLECTUAL PROPERTY LAW (USA) OFFICE, INC.,** an Oregon corporation,<br><br>　　　Plaintiff,<br><br>　-vs-<br><br>**AFD CHINA INTELLECTUAL PROPERTY LAW OFFICE,** a Chinese Corporation,<br><br>　　　Defendant,<br><br><br>**AFD CHINA INTELLECTUAL PROPERTY LLC**, a Maryland limited liability company,<br><br>　　　Counterclaim Plaintiff,<br><br>　-vs-<br><br>**LEI WANG, a/k/a LYNN WANG**,<br><br>　　　Third Party Counterclaim Defendant. | Case No.: 3:09-CV-1509-BR<br><br><br>**AFD CHINA'S AND AFD LLC'S MEMORANDUM IN SUPPORT OF THEIR OMNIBUS MOTION *IN LIMINE***<br><br>**(Filed Under Seal)** |

<h1 style="text-align: center;">TABLE OF CONTENTS</h1>

I.     INTRODUCTION ........................................................................................................ 1

II.    ARGUMENTS AND AUTHORTIES ............................................................................ 2

    A.     Motion in Limine #1: to exclude any evidence and arguments not related to trademark infringement ........................................................................ 2

    B.     Motion in Limine #2: to exclude any arguments or evidence related to any alleged duties AFD China owed to AFD USA or Ms. Wang ......................... 2

    C.     Motion in Limine #3: to exclude all evidence and arguments inconsistent with the Court's Summary Judgment order ......................................................... 3

    D.     Motion in Limine #4: to exclude all evidence and arguments related to AFD China's compliance with Chinese tax law or the structure of the parties' cooperation ................................................................................................ 6

    E.     Motion in Limine # 5: to exclude all evidence, analyses, or arguments related to AFD USA's allegation that AFD China has not produced invoices ............................................................................................................... 7

    F.     Motion in Limine #6: to exclude any arguments or allegations regarding the sufficiency of AFD China's document production ............................................ 9

    G.     Motion in Limine #7: to exclude any references to Ms. Morones as a "damages expert" and any opinions from Ms. Morones related to AFD USA's damages .......................................................................................................... 9

    H.     Motion in Limine #8: to exclude any analysis by Ms. Morones regarding AFD China's total revenue ............................................................................ 10

    I.     Motion in Limine #9: to exclude any analysis of AFD China's cases "originated" by Ms. Wang ...................................................................................... 12

    J.     Motion in Limine #10: to exclude any testimony or analysis from Ms. Morones regarding John Hansen's analysis ........................................................ 13

    K.     Motion in Limine #11: to exclude any damage reports or analysis by Darrell Dorrell ........................................................................................................ 14

    L.     Motion in Limine # 12: to exclude any testimony from Ms. Wang regarding the reason why her alleged former clients stayed with AFD China ..................................................................................................................... 15

    M.     Motion in Limine #13: to exclude any evidence and arguments related to AFD USA's  untimely statute of limitations defense .......................................... 17

N.      Motion in Limine #14: to exclude any evidence and arguments related to the alleged "incontestability" of AFD USA's registration of the AFD Mark ...................................................................................... 17

O.      Motion in Limine #15: to exclude any evidence or arguments related to AFD USA's Tacking defense .......................................................... 18

P.      Motion in Limine #16: to exclude any evidence or testimony relating to AFD  USA's newsletters ..................................................... 19

Q.      Motion in Limine #17: to exclude any evidence or testimony relating to translations performed by AFD China or AFD USA .......................................... 20

R.      Motion in Limine # 18: to exclude any evidence or arguments related to the quality of AFD China's services .................................................... 21

S.      Motion in Limine # 19: to exclude any reference to AFD China as "AN XIN FON DA." ................................................................. 21

III.    CONCLUSION ........................................................................................ 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aycock Eng'g, Inc. v. Airflite, Inc.*,
    560 F.3d 1350 (Fed. Cir. 2009)................................................................19

*Barcamerica Int'l USA Trust v. Tyfield Importers, Inc.*,
    289 F.3d 589 (9th Cir. 2002) ...........................................................20, 21

*Bright Beginnings, Inc., v. Care Comm, Inc.*,
    No. CV 93-1676 ER, 1994 WL 237356 (C.D. Cal. Feb. 28, 1994)........................19

*Brookfield Communs v. W. Coast Entm't Corp.*,
    174 F.3d 1036 (9th Cir. 1999) ............................................................19

*Cook v. Hatch Assocs.*,
    No. 02-0065, 2007 WL 1267023 (W.D.N.Y. Apr. 30, 2007)...................................3

*Greyhound Corp. v. Armour Life Ins. Co.*,
    214 U.S.P.Q. 473 (TTAB 1982) ...........................................................19

*Intel Corp. v. Terabyte Int'l, Inc.*,
    6 F.3d 614 (9th Cir. 1993) ..............................................................10

*Levi Strauss & Co. v. Blue Bell, Inc.*,
    778 F.2d 1352 (9th Cir.1985) ............................................................17

*Levi Strauss & Co. v. GTFM, Inc.*,
    196 F.Supp.2d 971 (N.D.Cal. 2002) ......................................................18

*Lindy Pen Co. v. Bic Pen Corp.*,
    982 F.2d 1400 (9th Cir. 1993) .................................................10, 14, 15

*Littleton v. Pilot Transp. Ctr.*,
    No. 3:04-CV-00224, 2006 WL 751285 (E.D. Ark. Mar. 22, 2006) .........................5

*Mahroom v. Best Western Int'l, Inc.*,
    No. C 07-2351 JF (HRL), 2009 WL 2216578 (N.D. Cal. July 22, 2009) ...............10

*Networks USA XVIII, Inc. v. Denny's Inc.*,
    No. 4:04-CV-1760, 2007 WL 172569 (E.D. Mo. Jan 19, 2007) ..............................3

*New W. Corp. v. NYM Co. of Cali., Inc.*,
    595 F.2d 1194 (9th Cir. 1979) ...........................................................19

*Reeves v. Fed. Reserve Bank of Chi.*,
No. 00-5048, 2004 WL 742248 (N.D. Ill. Apr. 6, 2004) ........................................................3

*Rolex Watch, U.S.A., Inc. v. Michel Co.*,
179 F.3d 704 (9th Cir. 1999) ........................................................................................9, 14

*Societe de Devs. et D'innovations des Marches Agricoles et Alimentaires-Sodima-Union de Cooperatives Agricoles v. Int'l Yogurt Co., Inc.*,
662 F.Supp. 839 (D. Or. 1987) ................................................................................................18

*Tennison v. Circus Circus Enters., Inc.*,
244 F.3d 684 (9th Cir. 2001) ..................................................................................................5

*Vuitton et Fils S.A. v. J. Young Enters., Inc.*,
644 F.2d 769 (9th Cir.1981) ....................................................................................................17

## Statutes

15 U.S.C. § 1051, 1053 ....................................................................................................................18

15 U.S.C. §§ 1057(b) & 1115(a) ....................................................................................................17

15 U.S.C. § 1127 ..............................................................................................................................18

## Other Authorities

Charles A. Wright & Kenneth W. Graham, 21 FEDERAL PRACTICE & PROCEDURE FEDERAL RULES OF EVIDENCE § 5037.10 ..................................................................................................2

Fed. R. Evid. 402 ..............................................................................................................................2

Fed. R. Evid. 403 ..........................................................................................................................2, 8

Fed. R. Evid. 602 ............................................................................................................................16

Fed. R. Evid. 702 ........................................................................................................................8, 11

Fed. R. Evid. 802 ............................................................................................................................16

Kenneth S. Broun, 1 MCCORMICK ON EVIDENCE § 185 (6th Ed. 2006) ..........................................2

3 J. Thomas McCarthy, TRADEMARKS AND UNFAIR COMPETITION § 17:26 (4th ed.) ....................18

3 J. Thomas McCarthy, TRADEMARKS AND UNFAIR COMPETITION § 2:1 (4th ed.) ........................12

AFD China Intellectual Property Law Office ("AFD China") and AFD China Intellectual Property LLC ("AFD LLC") submit this Memorandum in Support of their Omnibus Motion *In Limine*.

## I.
## <u>INTRODUCTION</u>

The central focus of this case is the trademark "AFD" (the "AFD Mark") and the determination of who is the rightful owner of the mark as well as whether any parties improperly utilized the AFD Mark.  However, if an outsider to this matter were to examine the approximately 300 filings made in this case, she would find herself sidetracked by numerous irrelevant and immaterial arguments made primarily by plaintiff AFD China Intellectual Property Law (USA) Office and its principal, Lynn Wang.  These issues range from which clients Ms. Wang introduced to AFD China – which is irrelevant to the elements of trademark infringement – to whether AFD China produced all requested documents – which was resolved by this Court almost a year ago.

As the Court noted at a January 3, 2014 hearing, we have entered year five of this litigation.  Both fact and expert discovery is complete.  The claims were narrowed after a round of summary judgment motions.  The Court entered the pretrial order.  Now is the time to eliminate all further distractions and focus on the central trademark issues remaining.  Therefore, AFD China requests that the Court exclude the following topics.

## II.
## ARGUMENTS AND AUTHORITIES

### A. Motion in Limine #1: to exclude any evidence and arguments not related to trademark infringement.

"Irrelevant evidence is not admissible."[1]  When "evidence is offered to help prove a proposition that is not a matter in issue," that evidence is immaterial.[2]  Granting a motion *in limine* on irrelevant evidence fosters trial efficiency by avoiding the constant disruptions as a result of relevancy objections, allowing the parties to better anticipate the scope of arguments, and saving the time and expense of unnecessary testimony.[3]  The Court is also authorized to exclude relevant evidence "by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."[4]

This case is about which entity owns the AFD Mark and whether there has been any infringement of said mark.  Any testimony or argument outside those confines is irrelevant and exclusion of that testimony and argument will avoid wasting time and money and prevent the possible confusion of the jury.

### B. Motion in Limine #2: to exclude any arguments or evidence related to any alleged duties AFD China owed to AFD USA or Ms. Wang.

The issue of what duties AFD China might have owed to AFD USA or Ms. Wang has already been litigated in this and other courts.  In 2009, the First Intermediate People's Court of Beijing held that AFD China did not breach its cooperation agreement with AFD USA and that

---

[1] Fed. R. Evid. 402.

[2] Kenneth S. Broun, 1 MCCORMICK ON EVIDENCE § 185 (6th Ed. 2006).

[3] *See* Charles A. Wright & Kenneth W. Graham, 21 FEDERAL PRACTICE & PROCEDURE: FEDERAL RULES OF EVIDENCE § 5037.10 (2007).

[4] Fed. R. Evid. 403.

AFD China did not owe AFD USA any further payments.[5]  The trial court's ruling was affirmed

by the Higher People's Court of Beijing and the Supreme People's Court of Beijing.  AFD China

and Ms. Wang further resolved their disputes regarding the cooperation agreement when they

settled their dispute in the Superior Court of California, County of Santa Clara in early 2012.[6]

And, as noted below in Motion in Limine No. 3, this Court has already found that there was no

joint venture (and therefore no duties owed under the alleged joint venture) between AFD China

and AFD USA.

Any evidence, testimony, or arguments related to any alleged duties AFD China owed to

AFD USA or Ms. Wang are irrelevant to the remaining dispute before this Court: which party

owns the AFD Mark.  To allow AFD USA to present such evidence and arguments will merely

delay trial proceedings and improperly allow AFD USA another shot at the claims that have

already failed here and in China.  Furthermore, such evidence will likely confuse the jury on the

outstanding trademark issues.  Therefore, the Court should exclude all evidence, testimony, or

arguments related to alleged duties owed by AFD China.

**C.**     **Motion in Limine #3: to exclude all evidence and arguments inconsistent with the Court's Summary Judgment order.**

The Court granted AFD China's Motion for Partial Summary Judgment and dismissed

AFD USA's claims of Unjust Enrichment (Claim 5), Intentional Interference with Economic

Relations (Claim 6), and AFD USA's alternative claims premised on the existence of a joint

---

[5] ECF Nos. 199-28 and 199-29, filed April 5, 2013.

[6] Joint Statement of Agreed Facts, ECF No. 166, filed December 31, 2013, ¶ 33.

venture (Claims 7-11).[7]  Any testimony, exhibits, theories, or arguments relating to the issues already decided by the Court in the Order are clearly inadmissible.[8]  Specifically:

1.     The Court granted summary judgment for AFD China on AFD USA's Unjust Enrichment claim, which alleged that AFD China had improperly benefited from AFD USA's "proprietary client information and contacts" that AFD USA had allegedly developed independently.[9]  The Court ruled that the alleged conduct was "subsumed by the Cooperation Agreement" and therefore AFD China was entitled to summary judgment.[10]  As such, AFD USA should not be permitted to introduce evidence or arguments that AFD China somehow improperly utilized AFD USA's alleged proprietary client information and contacts.

2.     The Court also granted summary judgment for AFD China on AFD USA's Intentional Interference with Economic Relations claim, which alleged that AFD China improperly interfered with AFD USA's business relationships by "attempting to persuade AFD USA's [alleged] clients to end all communications with AFD USA and to refer all payments and intellectual property consulting work directly to [AFD China or AFD LLC]."[11]  The Court again ruled that such conduct was "subsumed by the Cooperation Agreement."[12]  As such, AFD USA should not be permitted to introduce evidence or arguments that AFD China's communications

---

[7] ECF No. 230.

[8] *See, e.g.*, *Cook v. Hatch Assocs.*, No. 02-0065, 2007 WL 1267023, at *2 (W.D.N.Y. Apr. 30, 2007) (granting motion *in limine* to exclude evidence relevant only to claims that were dismissed on summary judgment); *Networks USA XVIII, Inc. v. Denny's Inc.,* No. 4:04-CV-1760, 2007 WL 172569, at *1 (E.D. Mo. Jan 19, 2007) (same); *Reeves v. Fed. Reserve Bank of Chi.*, No. 00-5048, 2004 WL 742248, at *3 (N.D. Ill. Apr. 6, 2004) (same).

[9] ECF No. 66, filed March 19, 2012, ¶ 45.

[10] ECF No. 230, entered July 31, 2013, p. 5.

[11] ECF No. 66, ¶ 52.

[12] ECF No. 230, p. 5.

with clients at or around the time of the termination of AFD China's and AFD USA's cooperation were improper.

3.      The Court also granted summary judgment for AFD China on AFD USA's "alternative claims" which alleged that AFD China and AFD USA formed a joint venture. The Court concluded that AFD USA had not shown "sufficient evidence from which a rational juror could find a joint venture existed." Consequently, AFD USA should be excluded from introducing evidence or arguing that a joint venture existed between AFD China and AFD USA.[13] Similarly, AFD USA should be precluded from introducing evidence or making arguments that AFD China owed or breached any fiduciary duties as a partner in the alleged joint venture.[14]

As these examples show, there are a variety of issues that have been decided by this Court as a matter of law and for which it would be improper, unnecessary, and wasteful to re-litigate.[15] Admitting evidence (or allowing argument) regarding these issues would, in effect, give AFD USA a second bite at the apple to which it is not entitled. Therefore, the Court should grant AFD China's motion *in limine* to exclude such evidence and arguments.

---

[13] As demonstrated by AFD USA's proposed verdict form, AFD USA intends to argue that AFD China and AFD USA are somehow "co-owners" of the AFD Mark. ECF No. 299-1, filed February 21, 2014, question 12.

[14] *See* ECF No. 66, ¶ 67.

[15] *See Littleton v. Pilot Transp. Ctr.*, No. 3:04-CV-00224, 2006 WL 751285, at *2 (E.D. Ark. Mar. 22, 2006) (granting motion in limine and noting that the introduction of evidence on dismissed claims "would result in a mini-trial on what is now a collateral matter and it appears that such evidence would consume as much time or more than the evidence to be presented on the only remaining and narrow [issues]"); *see also Tennison v. Circus Circus Enters., Inc.*, 244 F.3d 684, 690 (9th Cir. 2001) (excluding evidence to avoid "mini trial").

**D.** **Motion in Limine #4: to exclude all evidence and arguments related to AFD China's compliance with Chinese tax law or the structure of the parties' cooperation.**

AFD USA has attempted to distract the Court from the relevant issues in this matter by alleging that AFD China has not properly complied with Chinese tax laws.[16]  For example, when the Court asked AFD USA to present an argument on whether it would be overly burdensome for AFD China to produce all invoices it sent to US clients,[17] AFD USA pointed out discrepancies between invoices produced and AFD China's tax filings with the Chinese government and also filed a 10-page expert opinion analyzing those tax filings.[18]  When AFD USA attempted to compel arbitration in this matter, Ms. Wang declared to the Court that AFD China's principal – Xia Zheng – told her that the alleged structure of the cooperation agreement between AFD China and AFD USA was to avoid tax issues in China.[19]  Ms. Wang also made similar allegations about AFD China's taxes in an attempt to stave off summary judgment.[20]

The remaining issues in this case involve (1) determining which party is the rightful owner of the AFD Mark, and (2) determining whether any other party infringed on that ownership.  AFD China's tax filings in a foreign country are irrelevant to those issues, and none of AFD USA's allegations in its Second Amended Complaint involve AFD China's tax filings.  Even if they were relevant, AFD USA failed to designate any expert on Chinese tax law.  The Court should not allow AFD USA to distract or mislead the jury with arguments about whether AFD China properly filed its taxes in the People's Republic of China or any argument or

---

[16] AFD USA's Trial Exhibit 48 is a set of Requests for Admissions that deal predominantly with tax issues, indicating that AFD USA wishes to revive this issue again at trial.

[17] ECF No. 128, filed August 2, 2012.

[18] ECF No. 146, filed November 26, 2012 and ECF No. 149, filed November 29, 2012.

[19] ECF No. 95, filed June 29, 2012, ¶ 7.

[20] Declaration of Lynn Wang in Support of AFD USA's Opposition to AFD China's and AFD LLC's Motion for Partial Summary Judgment, ECF No. 209, filed April 27, 2013, ¶ 8.

testimony regarding why the Cooperation Agreement was entered into or structured in a certain way.  Therefore, AFD USA should be precluded from introducing any evidence, arguments, or opinions related to AFD China's Chinese tax filings, AFD China's compliance with Chinese tax laws, or the tax implications of the parties' cooperation.

**E.**     **Motion in Limine # 5: to exclude all evidence, analyses, or arguments related to AFD USA's allegation that AFD China has not produced invoices.**

On July 16, 2012, AFD USA filed a Motion to Compel Production of all invoices that AFD China sent to clients in the United States and Canada.[21]  After months of briefing and multiple depositions occurring on two continents, the Court granted in part AFD USA's motion and ordered AFD China to produce the requested invoices.[22]  AFD China completed the production of invoices in February 2013.

AFD USA's complaints about AFD China's document production have become a side-attraction to almost every motion filed by AFD USA in the past seven months.  When AFD USA sought to designate a new damages expert after its original expert withdrew, AFD USA attempted to blame AFD China's invoice production for the withdrawal[23] (though the former expert – Darrell Dorrell – later informed the Court that it was AFD USA's failure to timely provide AFD China's production that was partly responsible for his withdrawal).[24]  When AFD China later sought to recover its costs attributable to the expert substitution, AFD USA again brought up AFD China's invoice production as a reason why AFD China should not recover

---

[21] ECF No. 106.

[22] ECF No. 174, entered January 11, 2013.

[23] Declaration of Jack Russo in Support of AFD USA's Motion for Leave to Substitute Expert Witness and to Disclose Documents Under Protective Order, ECF No. 233, filed August 23, 2013, ¶ 6.

[24] Transcript of Proceedings, October 7, 2013, 18:3-8, attached to the Furness Dec. as Exhibit "B."

those costs.[25]  Most importantly to the resolution of this matter, AFD USA's new expert, Serena Morones, compared an alleged list of AFD China's cases on file with the Chinese intellectual property office and compared it to an (admittedly incomplete) database of AFD China's invoices to determine additional damages.[26]

Any evidence or arguments that imply that AFD China did not produce all invoices ordered by the Court should be excluded.  While AFD USA complained often about AFD China's production, it did not file an additional motion to compel or request a hearing on the issue as required by the Federal Rules of Civil Procedure and the local rules.  To allow AFD USA to imply that additional evidence exists when it did not seek to compel such evidence during the course of discovery would be highly prejudicial to AFD China.[27]

Furthermore, the analyses regarding "missing invoices" already provided by AFD USA have been flawed.  As further outlined in section II.C.2 of AFD China's Pre-Trial Memorandum, Ms. Morones – in her analysis – ignored several categories of documents that would explain the missing invoices, including 1) cases transferred to Ms. Wang at Pacific China or Peksung, 2) cases abandoned by their respective clients, and 3) the presence of alleged "missing" invoices in AFD China's actual production.  Ms. Morones' determination of whether any of AFD China's invoices are "missing" is simply incorrect and will not assist the trier of fact to understand the evidence or to determine a fact in issue.[28]  Therefore, any such analysis should be excluded.

---

[25] AFD USA's Opposition to AFD China's Motion for Reimbursement of Expert Witness Costs, ECF No. 283, filed January 13, 2014, p. 4.

[26] *See* AFD China's and AFD LLC's Reply in Support of Motion for Reimbursement of Expert Witness Costs, ECF No. 289, filed January 27, 2014, p. 5.

[27] Fed. R. Evid. 403.

[28] Fed. R. Evid. 702.

**F.**     **Motion in Limine #6: to exclude any arguments or allegations regarding the sufficiency of AFD China's document production.**

The Court should not permit AFD USA to make any arguments regarding whether AFD China produced all documents requested during discovery.  AFD China has produced all documents and has informed AFD USA of this repeatedly.[29]

Any discussion of the sufficiency of AFD China's production at this late stage is untimely and will only result in jury confusion.  Therefore, the Court should exclude any arguments or allegations on this topic.

**G.**     **Motion in Limine #7: to exclude any references to Ms. Morones as a "damages expert" and any opinions from Ms. Morones related to AFD USA's damages.**

Ms. Morones was not engaged as a damages expert.  Ms. Morones was simply engaged to quantify "gross revenues for AFD China related to invoices – invoices related to clients in the United States for a period of time as well as presented data that indicates there may be invoices that weren't produced."[30]  Ms. Morones went on to clarify that she had not been retained to provide an opinion on damages:

> Q.     Okay. And you have not formed any opinion as to damages that were sustained by AFD USA.  Is that correct?
>
> MR. RUSSO:          Objection to the form of the question, mischaracterization.
>
> THE WITNESS:      That's correct.[31]

Because Ms. Morones was not engaged to render an opinion of AFD USA's damages, she should not be considered a "damages expert."  Since Ms. Morones is not AFD USA's damages expert, she should not be referred to as AFD USA's damages expert or be permitted to

---

[29] *See* AFD China's and AFD LLC's Pre-Trial Memorandum, filed concurrently with this Motion, § II.L.

[30] Deposition of Serena Morones, January 18, 2014, 25:18-24, attached to the Furness Dec. as Exhibit "C."

[31] *Id.* at 27:9-14; *see also* 25:3-26:7, 26:18-23, 41:12-42:2, 46:6-8.

provide any opinion or testimony regarding AFD USA's damages in this matter at trial. Therefore, the Court should exclude ay testimony from Ms. Morones regarding AFD USA's damages.

**H.** **Motion in Limine #8: to exclude any analysis by Ms. Morones regarding AFD China's total revenue.**

AFD USA seeks a disgorgement of AFD China's profits. However, under trademark law, a plaintiff seeking disgorgement of profits must show with reasonable certainty defendant's revenue ***attributable to use of the infringing mark.***[32] AFD USA failed to make such a showing.

Ms. Morones did not conduct an analysis of either AFD USA's actual damages or AFD China's profits. She did not analyze revenue received by AFD China and then determine what revenue was attributable to infringement. Instead – as stated in her deposition – she "quantified gross revenues for AFD China related to invoices – invoices related to clients in the United States for a period of time. . . ."[33] This was an improper analysis as Ms. Morones failed to make any determination as to whether any of the invoices were actually ***paid*** – and would therefore be considered revenue. Ms. Morones also did not determine which invoice "revenue" – if any – was attributable to use of the AFD Mark in the United States. Furthermore, Ms. Morones was unable to state why her analysis was even relevant to AFD USA's alleged damages:

---

[32] *Rolex Watch*, 179 F.3d at 712 (affirming the district court's denial of request for profits because plaintiff did not show with reasonable certainty defendant's gross sales from infringing products); *Intel Corp. v. Terabyte Int'l, Inc.*, 6 F.3d 614, 621 (9th Cir. 1993) ("Damages are typically measured by any direct injury which a plaintiff can prove, as well as any lost profits which the plaintiff would have earned but for the infringement."); *Lindy Pen Co.*, 982 F.2d at 1407-08 (finding that plaintiff's calculation of defendant's profits flawed because it failed to subdivide sales caused by infringement); *Mahroom v. Best Western Int'l, Inc.*, No. C 07-2351 JF (HRL), 2009 WL 2216578, at *10 (N.D. Cal. July 22, 2009) (Best Western introduced financial statements of alleged infringer but failed to explain the extent, if any, to which room sales were attributable to the continued use of its trademarks).

[33] Deposition of Serena Morones, Furness Dec., Exhibit "C," 25:18-22.

Q.      Okay.  Looking at B, "Agent fee revenues invoiced by AFD China for cases and client relationships originated by Ms. Wang total $6,281,616." Do you see that?

A.      Yes.

Q.      What relevance does that have to any issue in this case as you understand it?

A.      I don't have an opinion about the relevance.[34]

Ms. Morones was unable to opine about the relevancy of such a calculation because it is irrelevant to any calculation of trademark damages.

Ms. Morones' analysis of AFD China's "revenue" is also improper because it was based on faulty data.  When asked how much time Ms. Morones spent reviewing actual invoices, she admitted it was "less than an hour."[35]  Ms. Morones went on to admit that she utilized a database initially created by Darrell Dorrell – AFD USA's former expert – but made no attempts to verify that the database was complete:

Q.      Looking at paragraph 16, do you know if the database that was prepared by someone includes every invoice from AFD China that they had for the years 2008 through 2012 and 2013?

A.      I do not.

Q.      Do you know if it includes every invoice they had for AFD China clients in the U.S.?

A.      I do not.[36]

Ms. Morones report will not assist the trier of fact in determining AFD China's profits attributable to its use of the AFD Mark.[37]  Therefore, any mention or reference of Ms. Morones' analysis of AFD China's "agent fee revenue invoiced" should be excluded.

---

[34] *Id.* at 51:15-22; *see also* 49:17-50:15, 51:6-13, 52:2-7.

[35] *Id.* at 54:10-12.

[36] *Id.* at 60:12-19; *see also* 56:19-57:9, 58:16-23, 59:17-60:4, 76:24-77:6 (Ms. Morones admits that database is incomplete).

# I.    Motion in Limine #9: to exclude any analysis of AFD China's cases "originated" by Ms. Wang.

A portion of Ms. Morones' report analyzes "Agent Fee Revenues Invoiced by AFD China for Cases Originated by Ms. Wang."  Neither Ms. Morones nor AFD USA provided any legal theory as to why such an analysis would be relevant in respect to AFD USA's alleged damages.  In fact, Ms. Morones could not testify to the accuracy of her analysis at her deposition:

> Q.    Okay.  So if I understand what you are saying, one of the things you did was compare the clients that Ms. Wang. indicated through Exhibit 7[38] she had originated with those that she had previously told you she had originated.
>
> A.    Yes.
>
> Q.    You didn't do any independent research to determine which clients Ms. Wang had originated apart from relying on what she told you either originally or through Exhibit 7.  Right?
>
> A.    Other than just referring to her QuickBooks data, that step, nothing other than that.
>
> \*\*\*
>
> Q.    Now this document, Exhibit &, you said was prepared by Ms. Wang's staff?
>
> A.    That's our understanding, yes.
>
> Q.    Do you know how much time they spent preparing it?
>
> A.    I do not.
>
> Q.    Do you know anything else about the process that was used to prepare it?
>
> A.    No.
>
> Q.    And you don't know if it's accurate or not, do you?
>
> A.    We do not.  We did not replicate obtaining this data.[39]

---

[37] Fed. R. Evid. 702.

[38] Attached to the Furness Dec. as Exhibit "D."

[39] Deposition of Serena Morones, Furness Dec., Exhibit "C," 67:10-68:15.

AFD CHINA'S AND AFD LLC'S MEMORANDUM IN SUPPORT OF THEIR
OMNIBUS MOTION *IN LIMINE*

D-2245720.3                                                                    Page 12

The remaining claims in this case regard the ownership of trademarks and federal and common law trademark infringement. Trademark law's focus is on the protection of the trademark itself as well as to protect consumers from confusion.[40] Whether clients of AFD China "originated" from Ms. Wang or some other source is irrelevant to the determination of which party owns the AFD Mark and whether there is a likelihood of confusion regarding use of the mark. Therefore, AFD USA should not be permitted to introduce evidence or arguments regarding whether AFD China's clients "originated" from Ms. Wang or AFD USA.

**J.** **Motion in Limine #10: to exclude any testimony or analysis from Ms. Morones regarding John Hansen's analysis.**

At Ms. Morones' deposition, she was asked whether she was engaged to respond to John Hansen's (AFD China's rebuttal expert) report. Ms. Morones stated that she "was asked to read it, be familiar with it."[41] When asked if she had any opinions regarding Mr. Hansen's report, she responded, "Not any big epiphany opinions"[42] before later admitting that she had not been requested to render any opinion regarding Mr. Hansen's "profitability analysis."[43] AFD China's counsel also walked through Mr. Hansen's report with Ms. Morones and confirmed she had no opinions. For example:

Q. In paragraph 48 he says, "This" – referring to the PCT Filer/Inovia revenue. "This revenue is not attributable to the use of the AFD mark and should be excluded from the calculation of AFD China's profits." Do you have any opinion on whether or not that revenue should be included or excluded from the calculation of AFD China's profits?

A. I do not have an opinion about that.

---

[40] 1 McCarthy on Trademarks § 2:1.

[41] Deposition of Serena Morones, Furness Dec., <u>Exhibit "C."</u>, 46:2.

[42] *Id.* at 46:6-8.

[43] *Id.* at 100:10-13.

Q.     In paragraph 49, Mr. Hansen talks about revenue from Park Translations.  And in the middle of the paragraph he says, "The translation services occurred entirely in China, and the relationship with Park Translations was developed in China."  Do you have any information with respect to whether or not that statement is correct?

A.     I do not.[44]

Because Ms. Morones was not engaged to provide any opinions regarding Mr. Hansen's rebuttal reports, and because she could not provide any opinions regarding those reports at her deposition, it would be untimely and improper for her to provide any opinions or testimony on those reports at trial.  Therefore, the Court should exclude any testimony or analysis from Ms. Morones related to Mr. Hansen's opinions in this matter.

**K.     Motion in Limine #11: to exclude any damage reports or analysis by Darrell Dorrell.**

On August 23, 2013, AFD USA informed the Court that its damages expert, Darrell Dorrell, had "withdrawn unilaterally and unexpectedly from this case."[45]  AFD USA requested, and the Court granted, permission to substitute Ms. Morones in place of Mr. Dorrell.  Ms. Morones subsequently produced her own opinion and report.  AFD China was not given the opportunity to take Mr. Dorrell's deposition (even though his deposition had been noticed on several occasions).

Because of Ms. Morones' substitution for Mr. Dorrell, Mr. Dorrell's opinions in this matter have been wholly replaced by Ms. Morones' opinions.  There is no foundation for his earlier opinions, and no witness could be called to support them.  To allow AFD USA to present any damage model created by Mr. Dorrell or to reference any of the work he did would be prejudicial to AFD China, as AFD China was never able to depose Mr. Dorrell on the basis,

---

[44] *Id.*at 97:22-98:12; *see also* 98:13-99:18 (paragraphs 50 and 53).

[45] ECF No. 232.

reliability, or accuracy of his opinions. Therefore, the Court should exclude any damage reports, analysis, or work product from Mr. Dorrell.

**L.      Motion in Limine # 12: to exclude any testimony from Ms. Wang regarding the reason why her alleged former clients stayed with AFD China.**

In a trademark suit, it is the plaintiff's burden to show with reasonable certainty the gross sales attributable to trademark infringement.[46] A party must not merely present evidence of the allegedly infringing party's total sales, but must identify sales that occurred due to infringement.[47]

Based on the discovery requested in this case as well as the expert report of Serena Morones, it is clear that AFD USA intends to establish damages through AFD China's invoices to US clients. However, AFD USA's principal – Lynn Wang – previously admitted that she has no personal knowledge of what invoices or client work would be attributable to the alleged trademark infringement. In her deposition, Ms. Wang admitted on several occasions that she was not aware why certain clients no longer worked with her:

> Q.      All right. How about Alleman Hall McCoy Russell & Tuttle? Do you recall this firm?
>
> A.      In Portland, Oregon?
>
> Q.      I don't know where they are.
>
> A.      If you could say the name of the sender, maybe I can confirm.
>
> Q.      This came out of your expert's report. I don't know.
>
> A.      Can you say the name again.
>
> Q.      Absolutely. Alleman, A-L-L-E-M-A-N –
>
> A.      Oh, yes.

---

[46] *Rolex Watch, U.S.A., Inc. v. Michel Co.*, 179 F.3d 704, 712 (9th Cir. 1999); *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1408 (9th Cir. 1993).

[47] *Lindy Pen*, 982 F.2d at 1408.

Q. Okay. And are you currently working with them at Peksung?

A. No, I don't.

Q. Okay. Do you know why not?

A. They did not tell me.

Q. How about Banner Witcoff, do you work with them at Peksung?

A. No, I don't.

Q. Okay. Do you know why?

A. Why what?

Q. Why don't they work with you?

A. They are work – They are working with – No, I don't know…[48]

To the extent Ms. Wang attempts to testify at the trial about her opinion of why certain clients chose to work with AFD China instead of AFD USA, such testimony will be inadmissible, as Ms. Wang has previously admitted she has no personal knowledge of that topic.[49] Any testimony she could provide would be hearsay.[50] Therefore, the Court should exclude any testimony by Ms. Wang regarding the reasons clients chose to work with AFD China instead of AFD USA.

---

[48] Deposition of Lynn Wang, December 15, 2011, 126:13-127:11; *see also* 123:9-11 (David D'Ascenzo), 124:22-125:6 (McCallum), 127:15-128:14 (Banner & Witcoff), 129:4-25 (Brooks Kushman), 147:15-21(not one client told Ms. Wang why they did not refer her cases at Peksung). Excerpts from Ms. Wang's deposition are attached to the Declaration of Aimee Furness (the "Furness Dec."), filed concurrently with this motion, as Exhibit "A."

[49] Fed. R. Evid. 602.

[50] Fed. R. Evid. 802.

**M.     Motion in Limine #13: to exclude any evidence and arguments related to AFD USA's untimely statute of limitations defense.**

Over the past several months, AFD USA has repeatedly attempted to assert – for the first time – a statute of limitations defense in this case.[51]  AFD USA once again attempts to assert the statute of limitations through its Proposed Jury Instruction No. 74.  AFD China has already fully briefed its position regarding the merits of AFD USA's argument, and therefore expressly incorporates ECF Nos. 267 and 287 herein by reference.

The Court has already ruled that AFD USA may not present a statute of limitations defense.[52]  Therefore, the Court should exclude any arguments, evidence, or testimony that is related to AFD USA's untimely statute of limitations defense.

**N.     Motion in Limine #14: to exclude any evidence and arguments related to the alleged "incontestability" of AFD USA's registration of the AFD Mark.**

Throughout this case, AFD USA has held up its fraudulent and improper registration of the AFD Mark as the "end all be all" of this matter.  AFD USA attempts – through its proposed jury instructions – to use the registration as evidence of "incontestability" to impose a "clear and convincing burden" on AFD China.  However, because the AFD Mark was challenged within five (5) years of registration, the registration is "contestable" and only provides prima facie evidence of the validity and ownership of the mark, subject to any limitations stated in the

---

[51] AFD USA's Motion for Leave to File New Summary Judgment Cross-Motions Based on Recent Ninth Circuit Case Law, ECF No. 264, filed December 10, 2013; Plaintiff's Memorandum of Points and Authorities in Support of Motion for Leave to File First Amended Answer to Defendants' Counterclaims, ECF No. 281, filed January 10, 2014.

[52] ECF No. 292, entered January 28, 2014.

registration.[53]  The defendant must only rebut the presumption of plaintiff's exclusive right to use the trademark by a preponderance of the evidence.[54]

Any attempt by AFD USA to argue that its registration is "incontestable" or rebuttable only by a clear and convincing standard would mislead the jury regarding the importance of AFD USA's registration.  Therefore the Court should exclude any evidence and arguments related to the "incontestability" of AFD USA's registration.

**O.**     **Motion in Limine #15: to exclude any evidence or arguments related to AFD USA's Tacking defense.**

Tacking has never been formally pled or alleged in this matter.  It was not included in this Court's Pre-Trial Order.  However, AFD USA has indicted – primarily Proposed Jury Instruction No. 51  – that it will bring up such an argument at trial.

"Tacking" occurs when a trademark owner introduces a **new** mark and tries to obtain priority over a rival user of a **similar** mark by relating back ("tacking on") the new mark to its prior registered mark.[55]  There are not two marks in this matter.  The only mark disclosed as relevant by any party in this matter is the AFD Mark.  Because AFD USA's tacking argument is untimely, and because there is insufficient evidence to support such an argument, the Court should exclude any evidence or arguments relating to AFD USA's tacking defense.

---

[53] *See* 15 U.S.C. §§ 1057(b) & 1115(a); s*ee also Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1354–55 (9th Cir.1985) (finding that registration constitutes prima facie evidence).

[54] *See Vuitton et Fils S.A. v. J. Young Enters., Inc.*, 644 F.2d 769, 775 (9th Cir.1981) (noting that the presumption of validity need not be rebutted by "clear and convincing" evidence; only a preponderance of the evidence is required).

[55] 3 McCarthy on Trademarks § 17:26; *Levi Strauss & Co. v. GTFM, Inc.*, 196 F.Supp.2d 971, 984 (N.D.Cal. 2002).

**P.**     **Motion in Limine #16: to exclude any evidence or testimony relating to AFD USA's newsletters.**

AFD China alleges that AFD USA abandoned the AFD Mark shortly after the parties' cooperation was terminated in late 2007. AFD USA intends to rebut those allegations through evidence of "newsletters" it published to the afdip-usa.com website. These newsletters are not evidence of use of the AFD Mark.

The Lanham Act requires that a trademark or service mark be "used in commerce."[56] 15 U.S.C. § 1127 defines use of a service mark in commerce as "when it is used or displayed in the sale or advertising of services **and the services are rendered in commerce**. . . ." For abandonment purposes, to prove bona fide usage of the mark, the trademark holder must demonstrate that the use of the mark has been deliberate and continuous, not sporadic or casual.[57] Advertising of a service, without performance of this service, does not constitute use.[58] In other words, if a party has merely promoted services – whether through the mailing of solicitation letters featuring the mark[59] or through the gathering of resources and contractors[60] – and not actually conveyed the services allegedly advertised, then there has been no use of the mark.

---

[56] 15 U.S.C. § 1051, 1053.

[57] *Societe de Devs. et D'innovations des Marches Agricoles et Alimentaires-Sodima-Union de Cooperatives Agricoles v. Int'l Yogurt Co., Inc.*, 662 F.Supp. 839, 849 (D. Or. 1987).

[58] *New W. Corp. v. NYM Co. of Cali., Inc.,* 595 F.2d 1194, 1200 (9th Cir. 1979); *see also Brookfield Communs v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1052 (9th Cir. 1999) ("both the express statutory language and the case law [] firmly establish[] that trademark rights are not conveyed through mere intent to use a mark commercially"); *Bright Beginnings, Inc., v. Care Comm, Inc.* No. CV 93-1676 ER, 1994 WL 237356, at *1 (C.D. Cal. Feb. 28, 1994) (*citing Greyhound Corp. v. Armour Life Ins. Co.*, 214 U.S.P.Q. 473 (TTAB 1982)) (emphasis added).

[59] *Bright Beginnings,* 1994 WL 237356 at *2.

[60] *See Aycock Eng'g, Inc. v. Airflite, Inc.*, 560 F.3d 1350, 1360-61 (Fed. Cir. 2009) (holding that the purchase of toll-free telephone numbers and contracting with air taxi operators was not enough to show that applicant had performed services related to the "arranging of flights between an air taxi operator and a passenger").

It is undisputed that AFD USA's registration for the AFD Mark was for "legal services." Newsletters – which actually only contain direct quotes from press releases from various sources, including the State Intellectual Property Office of the People's Republic of China[61] – posted on a website does not constitute "legal services." Such evidence is irrelevant to the question of whether AFD USA abandoned the AFD Mark and is likely to confuse the jury. Therefore, the Court should exclude any evidence or testimony related to AFD USA's newsletters.

**Q.** **Motion in Limine #17: to exclude any evidence or testimony relating to translations performed by AFD China or AFD USA.**

AFD USA has indicated through its proposed witness list that it seeks to elicit testimony from contractors AFD USA employed to review translations of documents from English to Chinese.[62] AFD USA has indicated that these witnesses will discuss the quality of translations. However, the quality of AFD China's or AFD USA's translations is irrelevant to this dispute. The only issue at dispute regarding "quality" is AFD China's allegation that AFD USA abandoned the AFD Mark by failing to exercise "quality control" of the services performed under the mark. Uncontrolled or "naked" licensing of a trademark may result in the trademark ceasing to function as a symbol of quality.[63] Therefore, when the owner of a mark fails to exercise adequate quality control over a licensee, a court may find that the trademark owner abandoned the trademark and is estopped from asserting rights to the trademark in an infringement suit.[64] The Ninth Circuit has previously found naked licensing to void a trademark registration when a party allowed another party to use its mark without any express contractual

---

[61] ECF No. 199-38, filed April 5, 2013.

[62] Namely, Dr. Li Chunsheng and Dr. Jay Cheng.

[63] *Barcamerica Int'l USA Trust v. Tyfield Importers, Inc.*, 289 F.3d 589, 596 (9th Cir. 2002).

[64] *Id.* at 596.

rights to control the use of the mark or to inspect the quality of the goods provided under the mark.[65]

Any testimony regarding translations is irrelevant because translations do not constitute "legal services" and therefore would not constitute use of the mark. Testimony regarding translations will simply confuse the jury, waste the Court's time, and prejudice AFD China. Therefore, the Court should exclude any evidence or testimony relating to translations.

### R. Motion in Limine # 18: to exclude any evidence or arguments related to the quality of AFD China's services.

AFD USA has indicated that it intends to present evidence, witnesses, and arguments that the quality of the services performed under the AFD Mark declined after the termination of AFD USA.[66] However, quality is not an element of trademark infringement. As outlined above, the only "quality" issue at dispute is whether AFD USA exercised "quality control" over services performed under the mark. The actual quality of the services – good or bad – is irrelevant.[67]

This is not a dispute over which party can best serve its clients but a dispute over who owns the AFD Mark. The issue of quality will simply confuse or mislead the jury. Therefore, the Court should exclude any evidence or arguments related to the quality of AFD China's services.

### S. Motion in Limine # 19: to exclude any reference to AFD China as "AN XIN FON DA."

Over the course of this litigation, AFD USA has frequently attempted to prejudice AFD China by referring to it in pleadings as AN XIN FON DA – AFD China's former name. This is despite the fact that AFD China was properly named in the initial pleadings of this case.

---

[65] *Id.*

[66] Namely through the testimony of Jo Lee and John Motley.

[67] *Barcamerica*, 289 F.3d at 598 ("[W]hat matters is that Barcamerica played no meaningful role in holding the wine to a standard of quality—good, bad, or otherwise.").

While AFD China will not dispute that it was once known as AN XIN FON DA, it has used the AFD China name since 2004 and is its official name in China. To allow AFD USA to call AFD China by its former name may confuse the jury, and will certainly prejudice AFD China despite the fact that it has gone by its name for more almost a decade. Therefore, the Court should exclude any present-day reference to AFD China as "AN XIN FOND DA."

### III.
### CONCLUSION

Any evidence or arguments regarding the topics above are not relevant to the outstanding claims and will only distract the jury from resolving the true dispute in this matter. While that may be AFD USA's intended purpose, the Court should not entertain it and grant AFD China's motions *in limine*.

Dated: March 7, 2014        */s/ Aimee Furness*

Christopher E. Hawk, OSB #061635
Gordon & Rees LLP
121 SW Morrison Street, Suite 1575
Portland, Oregon 97204

Glenn Westreich *(Pro Hac Vice)*
Aimee Furness *(Pro Hac Vice)*
Haynes and Boone, LLP
2033 Gateway Place, Suite 300
San Jose, California 95110

ATTORNEYS FOR AFD CHINA
INTELLECTUAL PROPERTY LAW OFFICE

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that a true and correct copy of AFD China's and AFD LLC's Memorandum in Support of their Motion for Reimbursement of Expert Witness Costs has been served on all counsel of record, as indicated below, on this 7th day of March, 2014.

Jack Russo                                          *<u>Via Email</u>*
Ansel Halliburton
Computerlaw Group LLP
401 Florence Street
Palo Alto, California 94301


                                                    */s/ Aimee M. Furness*
                                                    Aimee M. Furness