Christopher E. Hawk, OSB #061635
Gordon & Rees LLP
121 SW Morrison Street, Suite 1575
Portland, OR 97204
Tel: (503) 222-1075
Fax: (503) 616-3600
Email: chawk@gordonrees.com

Glenn Westreich (Pro Hac Vice)
Aimee Furness (Pro Hac Vice)
Haynes and Boone, LLP
2033 Gateway Place, Suite 300
San Jose, CA 95110
Tel: (408) 660-4151
Email: glenn.westreich@haynesboone.com
         aimee.furness@haynesboone.com

Attorneys for AFD China Intellectual Property Law Office
and AFD China Intellectual Property LLC

## UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON
## PORTLAND DIVISION

| | |
|---|---|
| **AFD CHINA INTELLECTUAL PROPERTY LAW (USA) OFFICE, INC.,** an Oregon corporation,<br><br>        Plaintiff,<br><br>    -vs-<br><br>**AFD CHINA INTELLECTUAL PROPERTY LAW OFFICE,** a Chinese Corporation,<br><br>        Defendant,<br><br><br>**AFD CHINA INTELLECTUAL PROPERTY LLC**, a Maryland limited liability company,<br><br>        Counterclaim Plaintiff,<br><br>    -vs-<br><br>**LEI WANG, a/k/a LYNN WANG,**<br><br>        Third Party Counterclaim Defendant. | Case No.: 3:09-CV-1509-BR<br><br><br>**AFD CHINA'S AND AFD LLC'S OMNIBUS MEMORANDUM IN OPPOSITION TO AFD USA'S MOTIONS IN LIMINE**<br><br>**(Filed Under Seal)** |

# TABLE OF CONTENTS

I.   INTRODUCTION ........................................................................................................ 1

II.  ARGUMENTS AND AUTHORITIES ........................................................................ 1

    A.   Response to AFD USA's Motion in Limine No. 1: Evidence Relating to
        Settlement Discussions ........................................................................................ 1

        1.   The AFD LLC Settlement Agreement ...................................................... 2

        2.   The California Settlement Agreement ....................................................... 4

    B.   Response to AFD USA's Motion in Limine No. 2: Evidence Related to
        Email Correspondence Among the AFD Companies ............................................ 4

    C.   Response to AFD USA's Motion in Limine No. 3: Evidence Related to
        Lack of Notice to AFD China of the Trademark Application or
        Registration ........................................................................................................ 6

    D.   Response to AFD USA's Motion in Limine No. 4: Damage Expert
        Opinions of John L. Hansen .................................................................................. 7

        1.   AFD China does not intend to present Mr. Hansen's opinions that
            specifically rebut Darrell Dorrell's opinions ............................................ 8

        2.   AFD China timely produced documents relied upon by Mr.
            Hansen ...................................................................................................... 9

        3.   The facts and data relied upon by Mr. Hansen are not "improper
            conclusions." ............................................................................................. 9

    E.   Response to AFD USA's Motion in Limine No. 5: The Court's Finding
        About Ms. Wang's Credibility .............................................................................. 12

    F.   Response to Motion in Limine No. 6: Evidence Relating to the
        Resignation of Darrell Dorrell ............................................................................. 14

    G.   Response to AFD USA's Motions in Limine Nos. 7, 8, and 10: Evidence
        of Other Lawsuits ............................................................................................... 16

        1.   The Chinese Litigation between AFD China and AFD USA
            (Motion in Limine No. 7) ......................................................................... 16

        2.   The California lawsuit between AFD China, AFD LLC, AFD
            USA, and Ms. Wang (Motion in Limine No. 8) ....................................... 18

        3.   The lawsuits between AFD USA, Ms. Wang, and Stoel Rives
            (Motion in Limine No. 10) ....................................................................... 19

    H.   Response to AFD USA's Motion in Limine No. 9: Evidence of AFD
        China's Counter-Claim Damages ......................................................................... 20

    I.   Response to AFD USA's Motion in Limine No. 11: Inovia/PCT Filer
        Dispute with Ms. Wang ....................................................................................... 21

III. CONCLUSION ............................................................................................................ 22

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Abbott Diabetes Care Inc. v. Roche Diagnostics Corp.*,
No. CO5-03117 MJJ, 2007 WL 4166030 (N.D. Cal. Nov. 19, 2007) ......................................3

*Barcamerica Int'l USA Trust v. Tyfield Importers, Inc.*,
289 F.3d 589 (9th Cir. 2002) .................................................................................................3

*In re Bose Corp.*,
580 F.3d 1240 (Fed. Cir. 2009).............................................................................................6

*City of New York v. Tavern on the Green, L.P.*,
427 B.R. 233 (S.D.N.Y. 2010)...............................................................................................7

*Daubert v. Merrell Dow Pharm., Inc.*,
509 U.S. 579 (1993)..............................................................................................................11

*Haggar Int'l Corp. v. United Co. For Food Indus. Corp.*,
No. 03 CV 5789 (CLP), 2012 WL 5956642 (E.D.N.Y. Nov. 28, 2012) .................................6

*Impact Mktg. Int'l, LLC v. Big O Tires, LLC*,
No. 2:10-cv-01809-MMD-VCF, 2012 WL 2092815 (D. Nev. June 11, 2012) ......................21

*John G. Danielson, Inc. v. Winchester-Conant Props., Inc.*,
332 F.3d 26 (1st Cir. 2003).................................................................................................10

*Lightning Lube, Inc. v. Witco Corp.*,
4 F.3d 1153 (3d Cir. 1993)...................................................................................................20

*Melodrama Pub., LLC v. Santiago*,
No. 12 Civ. 7830 (JSR), 2013 WL 1700929 (S.D.N.Y. Apr. 11, 2013)................................7

*Pandora Jeweler 1995, Inc. v. Pandora Jewelry, LLC*,
No. 09-61490-Civ., 2011 WL 2295269 (S.D. Fla. June 8, 2011)..........................................10

*Premier Dental Prods. v. Darby Dental Supply Co.*,
794 F.2d 850 (3d Cir.1986)....................................................................................................5

*Robi v. Five Platters*,
918 F.2d 1439 (9th Cir. 1990) ...............................................................................................6

*Rosso & Mastracco, Inc. v. Giant Food, Inc.*,
720 F.2d 1263 (Fed. Cir. 1983)..............................................................................................7

*Sementilli v. Trinidad Corp.*,
    155 F.3d 1130 (9th Cir. 1998) .............................................................................11

*Sengoku Works v. RMC Int'l*,
    96 F.3d 1217 (9th Cir.1996) ................................................................................5

*Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*,
    537 F.3d 1357 (Fed. Cir. 2008)............................................................................6

*United States v. Cedeno*,
    644 F.3d 79 (2d Cir. 2011)............................................................................12, 13

*United States v. Whitmore*,
    359 F.3d 609 (D.C. Cir. 2004) ..........................................................................14

*United States v. Woodard*,
    699 F.3d 1188 (10th Cir. 2012) .........................................................................13

**Statutes**

U.S.C. § 1117(a) .......................................................................................................10

**Other Authorities**

Fed. R. Evid. 403 .....................................................................................................12

Fed. R. Evid. 408.......................................................................................................2

Fed. R. Evid. 408(b) ...............................................................................................2, 4

Fed. R. Evid. 701...................................................................................................20, 21

Fed. R. Evid. 702.....................................................................................................20

Fed. R. Evid. 703 ..................................................................................................10, 11

Fed. R. Evid. 704 .....................................................................................................12

Fed. R. Evid. 801(c)..................................................................................................14

AFD China Intellectual Property Law Office ("AFD China") and AFD China Intellectual

Property LLC ("AFD LLC") file this Omnibus Memorandum in Opposition to AFD China

Intellectual Property Law (USA) Office, Inc.'s ("AFD USA") Motions *In Limine*.

## I.
## INTRODUCTION

The motivation behind AFD USA's Motions in Limine is readily apparent.  AFD USA

wishes the Court and the jury to ignore the behavior and malicious acts of AFD USA's principal

– Lynn Wang – and simply focus on AFD USA's registration of the trademark "AFD" (the

"AFD Mark") as the central point of this case.  However, to grant AFD USA's various motions

would prevent the jury from examining evidence relevant to AFD China's claims and defenses –

including evidence that AFD USA and Ms. Wang intended to defraud the United States Patent

and Trademark Office (the "USPTO") to extort AFD China.  For the reasons listed below, AFD

USA's Motions in Limine should be denied.

## II.
## ARGUMENTS AND AUTHORITIES

**A.**     **Response to AFD USA's Motion in Limine No. 1: Evidence Relating to Settlement Discussions.**

AFD China does not intend to present evidence of settlement communications.  There

have been no Federal Rule of Civil Procedure 68 offers of judgment.  In this respect, AFD China

does not contest AFD USA's Motion in Limine Number 1.

If AFD USA's Motion in Limine Number 1 seeks to prohibit the introduction of evidence

about formal and signed settlement agreements, AFD China opposes the Motion.  The evidence

that AFD China intends to present relates to the existence and terms of 1) the settlement

agreement between AFD USA and AFD LLC in this matter (the "AFD LLC Settlement

Agreement") and 2) the settlement agreement in the California lawsuit against Ms. Wang (the

"California Settlement Agreement").  Such evidence is relevant and does not offend Federal Rule

of Evidence 408.

Even if Rule 408 somehow limited the admissibility of executed settlement agreements, it

contemplates a host of scenarios under which such evidence would be admissible for purposes

other than "prov[ing] or disprov[ing] the validity or amount of a disputed claim."[1]  In pertinent

part, Rule 408(b) states that "[t]he court may admit this evidence for another purpose. . . ."[2]

AFD USA construes Rule 408 as a blanket exclusion.  However, Rule 408 – by *its own terms* –

is one of limited applicability.

**1.  The AFD LLC Settlement Agreement.[3]**

At the outset of this case, AFD USA sued AFD LLC for Lanham Act trademark

infringement, Lanham Act unfair competition, common law trademark infringement and unfair

competition, misappropriation of trade secrets, unjust enrichment, intentional interference with

economic relations, and conversion with respect to the AFD Mark.[4]  AFD USA subsequently

settled with AFD LLC.  Pursuant to that settlement agreement, AFD USA moved to dismiss all

claims against AFD LLC *with prejudice*.[5]  After AFD USA dismissed its claims against AFD

LLC, AFD LLC continued using the AFD Mark.

---

[1] *See* Fed. R. Evid. 408.

[2] Fed. R. Evid. 408(b).

[3] The Court should note that AFD USA did not object to the AFD LLC Settlement Agreement's
(AFD China's Trial Exhibit 165) presence on the joint exhibit list (*see* ECF No. 303, filed March
7, 2014).

[4] *See* First Amended Complaint, ECF No. 5, filed Feb. 22, 2010.

[5] *See* Plaintiff's Motion to Dismiss Claims Asserted Against Defendant AFD China Intellectual
Property LLC, ECF No. 51, filed Jan. 13, 2012.

The existence of and release of claims under the AFD LLC Settlement Agreement is relevant to the remaining claims. Assuming that AFD USA is the rightful owner of the AFD Mark – a fact that AFD China vehemently disputes – AFD USA permitted AFD LLC to utilize the AFD Mark in commerce after it released all claims against AFD LLC. Because AFD USA did not make any attempt to control AFD LLC's use of the mark after such time, AFD USA engaged in "naked" licensing and effectively abandoned the mark.[6] Accordingly, the existence of the AFD LLC Settlement agreement and its terms are relevant to provide the jury with context regarding the post-settlement relationship between the parties and AFD USA's *intent* to license the mark to AFD LLC.[7]

In addition, the AFD LLC Settlement Agreement is relevant to the damage claims asserted in this matter. AFD USA seeks damages for alleged trademark infringement. However, AFD USA has already recovered a portion of its alleged damages from AFD LLC. The jury should be permitted to know the amount of AFD LLC's settlement and offset that amount from any damages they may find.

---

[6] Uncontrolled or "naked" licensing of a trademark may result in the trademark ceasing to function as a symbol of quality. *Barcamerica Int'l USA Trust v. Tyfield Importers, Inc.,* 289 F.3d 589, 596 (9th Cir. 2002). Therefore, when the owner of a mark fails to exercise adequate quality control over a licensee, a court may find that the trademark owner abandoned the trademark and is estopped from asserting rights to the trademark in an infringement suit. *Id.* at 596. The Ninth Circuit has previously found naked licensing to void a trademark registration when a party allowed another party to use its mark without any express contractual rights to control the use of the mark or to inspect the quality of the goods provided under the mark. *Id.*

[7] *See generally, Abbott Diabetes Care Inc. v. Roche Diagnostics Corp.,* No. CO5-03117 MJJ, 2007 WL 4166030, at *13–14 (N.D. Cal. Nov. 19, 2007) (holding a settlement agreement had considerable probative value because the provisions of the settlement agreement altered the legal relationship between the parties in a manner that, in patent parlance, might well be described as some form of a "license").

### 2. The California Settlement Agreement.

The lawsuit filed by AFD China against Ms. Wang in the Superior Court of California, County of Santa Clara ended in a settlement.[8]  In that settlement, Ms. Wang and AFD USA agreed not to pursue any further payment related to a certain identified set of invoices.  However, those invoices are now included in Ms. Morones' damage analysis.  AFD China is entitled to use that information to cross-examine Ms. Morones.  Accordingly, such evidence is relevant to the issue of damages.

Both settlement agreements are highly probative under the circumstances of this case.  A blanket exclusion of all evidence related to the settlement agreements contravenes the flexibility built into Rule 408(b).  Because this evidence is both relevant and consistent with policy considerations, the jury is entitled to hear evidence of the existence and terms of the AFD LLC Settlement Agreement and the California Settlement Agreement, and to consider them along with other relevant facts and circumstances.

### B. Response to AFD USA's Motion in Limine No. 2: Evidence Related to Email Correspondence Among the AFD Companies.

AFD USA contends that emails between AFD China and AFD USA should not be admitted to establish the priority of use of the AFD Mark.  However, such emails are directly relevant to establishing the agency relationship between AFD China and AFD USA.  The emails will establish, as a matter of law, that AFD China was the first to use the mark in commerce.

AFD USA's Motion in Limine Number 2 further states, "There being no probative value whatsoever in the email correspondence at hand . . . instructs that any mention of the email correspondence should be excluded."  The Court should note that ten (10) emails between AFD

---

[8] The California Settlement Agreement is listed as AFD China's Proposed Trial Exhibit 223.

China and Ms. Wang pre-dating the Cooperation Agreement are on AFD USA's exhibit list.[9]

AFD USA's position is contradictory and untenable on this subject.

The first use of the AFD Mark by AFD USA was on behalf AFD China as its agent. AFD USA repeatedly, in written communications to both AFD China and to the clients, admitted to this agency relationship. The Cooperation Agreement actually required AFD USA to disclose this fact. AFD USA was a distributor of AFD China's services. If there is no written agreement, the Manufacturer/Principal is presumed to own the mark – not the agent.[10] Therefore, as AFD China's agent, AFD USA's use of the AFD Mark constituted AFD China's use of the mark. The email correspondence AFD USA seeks to exclude will demonstrate that AFD USA was not acting as an independent company but instead as an agent of AFD China.[11] The correspondence is relevant to the jury's determination of priority of use in the AFD Mark and should not be excluded, nor should the Court issue an instruction regarding the communications.

Additionally, evidence tending to establish AFD USA's role as an agent is relevant to AFD USA's intent to defraud the USPTO with respect to ownership of the mark. Therefore, Motion in Limine Number 2 should be denied.

---

[9] AFD USA's Trial Exhibits Numbered 10, 12, 13, 14, 17, 22, 25, 41, 43, and 44.

[10] *See Sengoku Works v. RMC Int'l,* 96 F.3d 1217, 1220–21 (9th Cir.1996); *Premier Dental Prods. v. Darby Dental Supply Co.*, 794 F.2d 850, 853–54 (3d Cir. 1986).

[11] In contrast to AFD USA's Motion in Limine Number 2, Ms. Wang did not tell customers that she was "establishing a new corporation adopting the tradename 'AFD'." Rather, her emails repeatedly state that she's leaving ANSEN to "join a different Chinese IP firm" (without mention of AFD China) or "My new firm – AFD China Intellectual Property Law Office, like ANSEN, is based in China." Declaration of Aimee Furness (the "Second Furness Dec."), filed concurrently with this memorandum, as Exhibit "3."

**C. Response to AFD USA's Motion in Limine No. 3: Evidence Related to Lack of Notice to AFD China of the Trademark Application or Registration.**

AFD USA seeks to exclude evidence and arguments related to AFD USA's failure to notify AFD China of its registration of the AFD Mark. However, such evidence is highly relevant to the jury's determination of whether AFD USA knowingly made false statements to the USPTO. Therefore, such evidence should not be excluded.

A party may seek cancellation of a registered trademark on the basis of fraud.[12] As AFD USA acknowledges in its own motion, since direct evidence of intent to defraud the USPTO is rarely available, intent can be proved by indirect and circumstantial evidence.[13]

Evidence that AFD USA failed to notify AFD China that it had registered the AFD Mark – while perhaps circumstantial – is highly relevant to the issue of whether AFD USA intended to defraud the USPTO. At the time of AFD USA's application for the AFD Mark, AFD China and AFD USA had been working together for almost two years. Evidence that AFD USA hid the registration from AFD China – combined with other evidence including, but not limited to, Ms. Wang's presence on emails where AFD China originated the AFD Mark, AFD USA's knowledge that AFD China provided all the legal services under the mark, and that *AFD China's services* were those outlined in the brochure that AFD USA attached to its trademark application as a specimen – will show by clear and convincing evidence that AFD USA intended to defraud the USPTO.

---

[12] *Robi v. Five Platters*, 918 F.2d 1439, 1444 (9th Cir. 1990).

[13] *Haggar Int'l Corp. v. United Co. For Food Indus. Corp.*, No. 03 CV 5789 (CLP), 2012 WL 5956642, at *5 (E.D.N.Y. Nov. 28, 2012); *see also In re Bose Corp.*, 580 F.3d 1240, 1245 (Fed. Cir. 2009) (quoting *Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1366 (Fed. Cir. 2008)) ("Of course, 'because direct evidence of deceptive intent is rarely available, such intent can be inferred from indirect and circumstantial evidence.'").

AFD USA argues that it had no obligation to "investigate and report" other users of the AFD Mark. However, evidence regarding AFD USA's failure to notify AFD China of the registration is not the same as an obligation to investigate other users. The Court should note, however, that the *Rosso* case cited by AFD USA states that an applicant must swear that "no other person, firm, corporation, or association, to the best of his knowledge and belief, has the right to use such mark in commerce."[14] Ms. Wang made such a declaration under oath when AFD USA applied for the AFD Mark, despite the fact that she had **personal knowledge** that AFD China was using the AFD Mark. Courts have previously held that the omission of another's right to use the mark applied for is a material omission justifying cancellation.[15] The Court should allow the jury to hear all the evidence weighing on AFD USA's fraud in filing its trademark registration.

**D.  Response to AFD USA's Motion in Limine No. 4: Damage Expert Opinions of John L. Hansen.[16]**

AFD USA seeks to bar portions of John Hansen's – AFD China's rebuttal expert – many reports and opinions issued in this matter. AFD USA's motion should be denied because 1) AFD USA complains of opinions that are no longer relevant, 2) AFD USA's complaints regarding the timeliness of documents relied upon by Mr. Hansen are invalid, and 3) the

---

[14] *Rosso & Mastracco, Inc. v. Giant Food, Inc.*, 720 F.2d 1263, 1266 (Fed. Cir. 1983).

[15] *Melodrama Pub., LLC v. Santiago*, No. 12 Civ. 7830 (JSR), 2013 WL 1700929, at *5 (S.D.N.Y. Apr. 11, 2013) (citing *City of New York v. Tavern on the Green, L.P.*, 427 B.R. 233, 242 (S.D.N.Y. 2010)).

[16] AFD China notes that, through inadvertence, Mr. Hansen's name was left off its witness list filed March 7, 2014. This Court has requested that the parties file an amended witness list by Monday, March 17, 2014. Mr. Hansen's name will be included on that amended witness list. AFD China notified AFD USA of the omission as soon as it became aware of it and included Mr. Hansen's name in the draft amended witness list forwarded to AFD USA in preparation for filing.

allegedly improper "conclusions" made by Mr. Hansen will be established by admissible

evidence and testimony at trial.

> 1.      **AFD China does not intend to present Mr. Hansen's opinions that specifically rebut Darrell Dorrell's opinions.**

Prior to his withdrawal in this matter, Darrell Dorrell – AFD USA's former damages

expert – presented five different damage models or theories, including theories based on

1) historic loss, 2) future lost profits, 3) fair market value loss, 4) AFD China's profits, and

5) 50% of converted invoices.[17]   However, as AFD USA admits in its Motion in Limine Number

6, Mr. Dorrell's opinions and theories have been superseded in this matter by Serena Morones'

new opinions.   Many of Mr. Hansen's reports that AFD USA takes issue with – in particular

portions from Mr. Hansen's December 6, 2011; April 9, 2012; and August 9, 2013 rebuttal

reports (the "Dorrell Rebuttal Reports") – were drafted in response to Mr. Dorrell's now-

superseded opinions.

Because Mr. Dorrell's opinions – by AFD USA's admission – have been superseded,

AFD China does not intend to utilize any of Mr. Hansen's rebuttals to those opinions.   Indeed,

many of those opinions are no longer relevant.   For example, AFD USA complains about

allegedly "conclusory opinions" by Mr. Hansen regarding whether the cooperation agreement

between AFD China and AFD USA was terminated properly, when that issue is clearly no longer

relevant to the remaining trademark claims.[18]   Therefore, any of the complaints AFD USA has

---

[17] A summary of these theories is listed in AFD China's and AFD LLC's Memorandum in
Support of Their Motion for Reimbursement of Expert Witness Costs, ECF No. 273, filed
December 20, 2013.

[18] *See* Section II(a) of AFD USA's Motion in Limine No. 4.   As explained in further detail
below, these "opinions" were actually factual assumptions made by Mr. Hansen which AFD
China will establish through fact witnesses at trial.

regarding the Dorrell Rebuttal Reports are moot and the Court need not waste its time determining their admissibility.

## 2. AFD China timely produced documents relied upon by Mr. Hansen.

In section I(f) of AFD USA's Motion in Limine Number 4, AFD USA seeks to bar any opinions formed in reliance on witness statements or expense reports that were allegedly not timely produced to AFD USA.  As AFD China has explained both in its Reply in Support of Motion for Reimbursement of Expert Witness Costs (ECF No. 289) and its Pre-Trial Memorandum (ECF No. 304), AFD USA's argument is without merit.  Documents regarding AFD China's expenses and variable profit margin were produced on March 12, 2012 and April 27, 2012, which was well within the discovery period for such documents.[19]  Any additional expense documents later produced by AFD China only became necessary when 1) AFD USA expanded the scope of its damage model by having its experts analyze AFD China's alleged revenue into 2013, and 2) when AFD USA drastically changed its theories through the opinions of Ms. Morones.  AFD China should not be prejudiced by AFD USA's designation of a new expert that extended expert discovery out long past the fact discovery deadline.

## 3. The facts and data relied upon by Mr. Hansen are not "improper conclusions."

AFD USA also complains about several "legal and factual conclusions" that Mr. Hansen made in his December 6, 2013 Rebuttal Report.[20]  AFD USA argues that Mr. Hansen attempted

---

[19] Declaration of Aimee Furness in Support of AFD China's Reply in Support of Motion for Reimbursement of Expert Witness Costs, ECF No. 209, ¶ 13.

[20] AFD USA also complains about "conclusions" made in earlier reports, but as noted above, those reports specifically rebutted the expert opinions of Darrell Dorrell, which were superseded by Ms. Morones' opinions.  Therefore, AFD China does not specifically address those alleged "conclusions."

to step into the role of the Court or the fact finder. Mr. Hansen's opinions are squarely within the confines of Rule 703.

Under the Lanham Act, a defendant must prove all elements of cost or deduction claimed.[21] A defendant may also show that profits the plaintiff seeks to recover are "not the natural and probable consequences of the infringement alone, but are also the result of other factors."[22] While the finder of fact will eventually determine which profits are the result of trademark infringement, it is not improper for an expert to calculate those profits based on certain factual scenarios. For example, in *Pandora Jewelers 1995, Inc. v. Pandora Jewelry, LLC*, an expert calculated damages for six "scenario constructions" which accounted for some of the many possible outcomes of the litigation, primarily related to what the jury determined was the geographical scope of the trademark use.[23] Because the expert's methodology was reliable, the district court found that the calculations would be helpful to the trier of fact and were therefore admitted.[24]

Ms. Morones analyzed alleged revenue invoiced by AFD China. AFD USA argues that all AFD China revenue is recoverable as "profits" of trademark infringement. Mr. Hansen's opinion simply outlines the revenues not attributable to any alleged infringement. For example, AFD USA complains about Mr. Hansen's opinion that Inovia/PCT Filer would have stayed with AFD China even without any alleged trademark infringement. AFD China will present evidence at trial that:

---

[21] 15. U.S.C. § 1117(a).

[22] *John G. Danielson, Inc. v. Winchester-Conant Props., Inc.*, 332 F.3d 26, 48 (1st Cir. 2003).

[23] No. 09-61490-Civ., 2011 WL 2295269, at *3 (S.D. Fla. June 8, 2011).

[24] *Id.* at *4.

*Inovia/PCT Filer is an Australian company and therefore, not properly included in a U.S. trademark infringement matter.

*AFD China and Inovia/PCT Filer had an agency agreement.  AFD USA was not a party to that contract.

*Inovia/PCT Filer's clients do not get to pick which Intellectual Property law firm they will use in any of the network's countries – that decision is solely in Inovia/PCT Filer's discretion.

*Prior to the termination, Ms. Wang asked Inovia/PCT Filer if the company would join her at a new Chinese law firm if she unaffiliated with AFD China – Inovia/PCT Filer declined.

*Invoia/PCT Filer was not confused by the use of the AFD Mark – it knew which entity was performing the actual legal work for its clients.

The revenues AFD China received from Inovia/PCT Filer are not properly attributable to AFD USA's alleged trademark infringement damages.  Ms. Morones included those revenues in her analysis.  Mr. Hansen disagreed and quantified the amount attributable to Invoia/PCT Filer as $800,556 and opined that those amounts should not be included in any alleged damage model.

Mr. Hansen opined that revenue from clients who received the "December 28, 2007 Termination Letter" would not be attributable to trademark infringement.  AFD China will present evidence at trial that will support that opinion.  Mr. Hansen's opinion is that the amount of revenue from those clients totaled $1,244,313 and should be deducted from AFD USA's alleged damages.  Mr. Hansen's opinions fall within Rule 703 and he should be allowed to present them.

"Unlike an ordinary witness . . . an expert is permitted wide latitude to offer opinions, *including those that are not based on firsthand knowledge or observation.*"[25]  AFD USA's assertion that Mr. Hansen cannot opine on the ultimate issue is directly contradicted by Federal

---

[25] *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592 (1993) (emphasis added) (cited by *Sementilli v. Trinidad Corp.*, 155 F.3d 1130, 1134 (9th Cir. 1998)).

Rule of Evidence 704:  "An opinion is not objectionable just because it embraces an ultimate issue."  AFD USA's Motion in Limine should be denied.

**E.      Response to AFD USA's Motion in Limine No. 5: The Court's Finding About Ms. Wang's Credibility.**

This Court has previously found that Ms. Wang "misled the Court, and that's fundamentally wrong."[26]  The Court further admonished Ms. Wang "to take great care in the representations she makes to the Court and under oath in her further dealings with this case."[27]  The Court's findings go directly to Ms. Wang's truthfulness and credibility in this matter.

AFD USA cites the wrong standard in its Motion in Limine.  According to Federal Rule of Evidence 403, the Court may exclude relevant evidence if its "probative value is ***substantially*** outweighed by a danger of . . . ***unfair*** prejudice."[28]  AFD USA purposely ignored the emphasized words.  In this matter, the Court found that Ms. Wang misled the Court.  The Court's finding does not give way to ***unfair*** prejudice.  Any prejudice incurred by Ms. Wang as a result of her misrepresentations is fair.

Other Circuits have dealt with this issue (though not in the context of a party's misrepresentations).  In *Cedeno*, the Second Circuit outlined a test to determine the relevancy and probative value of a prior court's finding that a witness lied.[29]  The overall balancing of these factors in this case leans toward admitting the Court's prior ruling and finding and allowing AFD China to question Ms. Wang about that finding.

---

[26] Transcript of Proceedings, January 11, 2013, 53:10-11.  Excerpts from this transcript are attached to the Second Furness Dec. Exhibit "1."

[27] *Id.* at 54:7-9.

[28] Fed. R. Evid. 403 (emphasis added).

[29] *United States v. Cedeno*, 644 F.3d 79, 83 (2d Cir. 2011).

First, courts examine whether the lie was under oath in a judicial proceeding or was made in a less formal context.[30]  In this matter, Ms. Wang made the misrepresentation to the Court in a Declaration.  The purpose of that Declaration was to convince the Court to refer this matter to arbitration.  The *Cedeno* court also examined whether the lie was about a matter that was significant.[31]  Here, Ms. Wang's misrepresentation was that she did not know what an agreement she signed contained.  That matter is significant because Ms. Wang swore to something under oath that was not true (which is similar to AFD China's claim that Ms. Wang made false statements under oath in AFD USA's application to the USPTO for the AFD Mark).  Further, courts review how much time has elapsed since the lie was told and whether there had been any intervening credibility determination regarding the witness.[32]  In this matter, the elapsed time is just a little over a year, which is recent according to some courts.[33]  The fourth factor is the apparent motive for the lie and whether a similar motive existed in the current proceeding.[34]  In this case, Ms. Wang's apparent motive was to convince the Court to find for her on the arbitration issue.  That motive remains, if not more so, at trial.  Finally, courts examine whether the witness offered an explanation for the lie and, if so, whether the explanation was plausible.[35]  Ms. Wang offered no explanation for the representation.  As in *Woodard*, this Court should find that the cross-examination on the credibility determination is appropriate and reject AFD USA's Motion in Limine.

---

[30] *Id.*

[31] *Id.*

[32] *Id.*

[33] *United States v. Woodard*, 699 F.3d 1188, 1195 (10th Cir. 2012) (finding that three years was "relatively recent").

[34] *Cedeno*, 644 F.3d at 83.

[35] *Id.*

AFD USA's argument that the Court's Order and findings on this matter are hearsay is ridiculous. Hearsay, by definition, is made by the declarant while not testifying at the current hearing or trial and offered to prove the truth of the matter asserted.[36] In this case, Ms. Wang has been admonished by the Court for her untruthfulness. A court's finding and order do not meet the definition of hearsay.

"Nothing could be more probative of a witness's character for untruthfulness than evidence that a witness has previously lied under oath."[37] The Court issued an admonition in its Order and that should be repeated for the jury. Further, AFD China should be able to ask questions of Ms. Wang about the Court's prior order.

**F.      Response to Motion in Limine No. 6: Evidence Relating to the Resignation of Darrell Dorrell.**

AFD China does not intend to present evidence regarding why Mr. Dorrell withdrew as AFD USA's expert in this matter or evidence speculating as to the same.[38] However, AFD USA's Motion in Limine goes much broader and seeks the exclusion of *any* evidence or testimony relating to Mr. Dorrell. Such an exclusion is improper because Ms. Morones cites Mr. Dorrell's prior work product as a basis for her opinions.

As AFD USA fully admits in its motion, Mr. Dorrell's opinions have been superseded by the opinions of Plaintiff's new damages expert, Ms. Serena Morones. However, just because Mr. Dorrell's opinions are no longer admissible does not mean that the Court should act as if Mr.

---

[36] Fed. R. Evid. 801(c).

[37] *United States v. Whitmore*, 359 F.3d 609, 620 (D.C. Cir. 2004).

[38] AFD China reserves the right to present evidence regarding Mr. Dorrell's resignation in support of any additional briefing required for its Motion for Reimbursement of Expert Witness Costs (ECF No. 272) or any other motions regarding reimbursement of attorney's fees or costs that maybe filed by any party in the future.

Dorrell never existed. To do so would prevent AFD China from examining Ms. Morones on the reliability of her opinions. For example, when Ms. Morones calculated agent fees allegedly invoiced by AFD China, she relied on a "database by Darrell Dorrell and Financial Forensics."[39] Ms. Morones has since admitted at her deposition that counsel for AFD USA had "discomfort" about Mr. Dorrell's data and that she herself had seen poor work quality from Mr. Dorrell in other cases.[40] Ms. Morones also admitted that she does not know whether Mr. Dorrell's database was correct or complete:

> Q. It's your understanding that Mr. Dorrell or Financial Forensics entered every AFD China invoice for U.S. clients that they had for the years 2008 and 2009 in their Excel spreadsheet?
>
> A. Yes. That's my understanding.
>
> Q. How do you know if they did that correctly?
>
> A. We don't.[41]

In fact, Mr. Dorrell's lawyer (who has been involved in this matter), acknowledged to Ms. Morones that Mr. Dorrell did not enter *all of the invoices* produced by AFD China into his database.[42] AFD China should be permitted to question why Ms. Morones would rely on materials created by and relied upon by Mr. Dorrell to form her opinions in this matter when a) both Ms. Morones and AFD USA's counsel questioned the reliability and accuracy of such

---

[39] Expert Report of Serena Morones dated October 28, 2013, ECF No. 275-5, filed December 20, 2013, p. 5.

[40] Deposition of Serena Morones, January 18, 2014, 34:20-35:8. *See also* 39:11-12 ("... I wouldn't expect [Mr. Dorrell's work] – from my own experience, I wouldn't expect it to be reliable."). Excerpts from Ms. Morones' deposition, Second Furness Dec. Exhibit "2."

[41] *Id.* at 60:5-11. *See also* 72:24-74:7, 76:11-77:12, 77:23-78:25.

[42] October 7, 2013 email between Leslie Johnson and Ansel Halliburton, ECF No. 290-8, filed January 27, 2014.

materials and b) Ms. Morones lacks any personal knowledge regarding whether Mr. Dorrell's work production – such as his invoice database – is complete and accurate.

To allow AFD USA to act as if Mr. Dorrell never existed in this matter is both nonsensical and prejudicial to AFD China. It is nonsensical for AFD USA – on one hand – to assert that Mr. Dorrell's opinions are no longer valid and therefore he should not be mentioned when – on the other hand – AFD USA uses Mr. Dorrell's prior opinions to challenge rebuttal reports drafted by AFD China's expert, John Hansen.[43] It is also inequitable to allow Ms. Morones to rely on Mr. Dorrell's work product and not permit AFD China to discuss that work product with Ms. Morones or the jury. To the extent that AFD USA seeks to exclude evidence and testimony regarding the reasons for Mr. Dorrell's withdrawal, AFD China has no objections. However, to the extent AFD USA seeks to exclude any reference to the materials created or provided by Mr. Dorrell that Ms. Morones still relies upon in her expert opinions, AFD USA's motion should be denied.

**G.      Response to AFD USA's Motions in Limine Nos. 7, 8, and 10: Evidence of Other Lawsuits.**

The very limited evidence AFD China seeks to present related to litigation between the parties in China and California, as well as the current lawsuit between Stoel Rives, LLP ("Stoel Rives") and AFD USA, is relevant to this matter and should be admitted.

**1.      The Chinese Litigation between AFD China and AFD USA (Motion in Limine No. 7).**

The lawsuit between AFD USA and AFD China before the First Intermediate People's Court of Beijing of the People's Republic of China (the "PRC Court") addressed the legal

---

[43] *See* AFD USA's Motion in Limine No. 4, ECF No. 308.

relationship between the parties. Some of the PRC Court's findings are relevant to this case and binding on the parties, including:

- AFD USA admitted in that matter that [AFD China] was responsible for completing all the attorney work during the cooperation;[44]

- AFD USA's purpose was to explore the market in North America and introduce cases related to Chinese intellectual property to AFD China who would offer the services, and assist AFD China in contacting clients;[45]

- AFD USA was a company established to provide "consultation services" related to Chinese intellectual property;[46]

- AFD USA forwarded the clients' instructions to AFD China and forwarded AFD China's services to the clients; and[47]

- AFD China was the only party that was offering intellectual property services and was required to do so diligently pursuant to the related regulations and professional rules made by related associations and authorities.[48]

Each of these findings is binding on AFD China and AFD USA and each are relevant to the claims before this Court.

Another issue that will arise at trial will be the definition of "Legal Services." As the PRC Court found, AFD China was the party performing the services.[49] The PRC Court further found that AFD USA's role was to market AFD China's services and assist in contacting the clients – not to perform legal services (those would be performed – pursuant to the Chinese

---

[44] Certified Translation of The First Intermediate People's Court of Beijing of the People's Republic of China's Civil Judgment (the "PRC Judgment"), ECF No. 199-29, filed April 5, 2013, p. 2.

[45] *Id.* at p. 9.

[46] *Id.*

[47] *Id.*

[48] *Id.* at p. 10.

[49] PRC Judgment, p. 10.

regulations and professional rules – by AFD China).[50]  AFD China should be permitted to present evidence of these holdings at trial.  At the very least, the Court should make the jury aware of these findings.

Further, the lawsuit before the PRC Court is relevant to AFD USA's and Ms. Wang's intent and motive in this matter.  Ms. Wang filed the Chinese lawsuit to recover monies from AFD China.  During that time period, neither Ms. Wang nor AFD USA issued any demand to AFD China to cease using AFD USA's alleged mark in the United States.  Ms. Wang and AFD USA stood silent for approximately two full years.  It was only after the loss in the PRC Court (on December 18, 2009) that this matter was filed on December 28, 2009.  This information is relevant to AFD China's waiver and acquiescence claims.

For each of these reasons, the Court should deny AFD USA's Motion in Limine related to the lawsuit before the PRC Court and overrule AFD USA's objections to AFD China's Trial Exhibits 175 and 176 (the PRC Judgment in Chinese and English).

## 2. The California lawsuit between AFD China, AFD LLC, AFD USA, and Ms. Wang (Motion in Limine No. 8).

The prior lawsuit between the parties that occurred before the Superior Court of the State of California in and for the County of Santa Clara (the "California Action") is also relevant to this matter.  As above, Ms. Wang and AFD USA made statements during the lawsuit that they should be bound by, including a admission that AFD USA and Ms. Wang are substantially identical parties.[51]

---

[50] *Id.* at p. 8.

[51] Notice of Motion and Motion to Stay Proceedings Pending Resolution of Earlier-Filed Parallel Foreign Action, filed in the California Action December 4, 2009, ECF No. 93-15, p. 8.

The California Action ended in a settlement. In that settlement, Ms. Wang and AFD USA agreed not to pursue any further payment related to a certain identified set of invoices. However, those invoices are now included in Ms. Morones' damage analysis. AFD China is entitled to use that information to cross-examine Ms. Morones.

As with the suit before the PRC Court, Ms. Wang and AFD USA made admissions in the California Action that they simply cannot run from in this matter. AFD China does not intend to re-litigate either the California or Chinese lawsuits. Instead, AFD China intends to use very specific factual findings, admissions, and timing issues in order to support its theories and defenses in this matter.

For each of these reasons, the Court should deny AFD USA's Motion in Limine related to the California Action and overrule AFD USA's objections to AFD China's Trial Exhibit 188 (Motion to Stay Proceedings wherein AFD USA admitted that AFD USA and Ms. Wang are substantially identical parties).

### 3. The lawsuits between AFD USA, Ms. Wang, and Stoel Rives (Motion in Limine No. 10).

AFD USA has indicated that it intends to call a current partner at Stoel Rives at the trial of this matter. The on-going litigation in both California and Oregon between AFD USA, Ms. Wang, and Stoel Rives is relevant to the bias of this witness.

On February 8, 2013, Stoel Rives filed suit against Ms. Wang and AFD USA seeking recovery of more than $400,000 in unpaid attorney's fees. On April 4, 2013, Ms. Wang and AFD USA filed suit against Stoel Rives seeking a declaration that, because the attorneys working on her case were not admitted in California, she was not required to pay those attorneys for their work as well as a declaration that because she, individually, did not sign an engagement

letter, she is not required to pay any fees to Stoel. Further, Ms. Wang and AFD USA imply that they have legal malpractice claims against Stoel Rives.

The lawsuits are highly relevant to the bias of a current Stoel Rives attorney. At issue in the dispute between Ms. Wang, AFD USA, and Stoel Rives is the $635,000.00 in legal fees that Stoel Rives allegedly "racked up" as well as any adverse legal malpractice judgment against the firm. Should AFD USA receive a favorable judgment in this matter, the claims against Stoel Rives may disappear. The jury should be allowed to hear that evidence and make its own determination about the Stoel Rives' attorney's credibility.

## H.    Response to AFD USA's Motion in Limine No. 9: Evidence of AFD China's Counter-Claim Damages.

An expert is not required to substantiate AFD China's counterclaim damages. Pursuant to Federal Rule of Evidence 701, a lay witness may testify in the form of an opinion so long as the opinion is "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact at issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."[52]

The advisory committee's note to Rule 701 states that business owners may present lay testimony regarding their company's profits, value, and damages.[53] The note explains that such testimony is not expert testimony because it "is admitted not because of experience, training or

---

[52] Fed. R. Evid. 701.

[53] Fed. R. Evid. 701, advisory committee's note (citing *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153 (3d Cir. 1993) (finding "no abuse of discretion in permitting the plaintiff's owner to give lay opinion testimony as to damages, as it was based on his knowledge and participation in the day-to-day affairs of the business")).

specialized knowledge within the realm of an expert, but because of the particularized

knowledge that the witness has by virtue of his or her position in the business."[54]

Xia Zheng is the President of AFD China. She has personal knowledge of its accounts

and is intimately involved in the company's day-to-day affairs. By virtue of her position, her

particularized knowledge is helpful to the jury in determining AFD China's damages. Stephen

Yang is AFD LLC's principal. He has personal knowledge of its accounts and is intimately

involved in the company's day-to-day affairs. Because Ms. Zheng and Mr. Yang are both

qualified to give their respective lay opinions under Rule 701, the Court should deny AFD

USA's Motion in Limine.

## I.  Response to AFD USA's Motion in Limine No. 11: Inovia/PCT Filer Dispute with Ms. Wang.

AFD China does not intend to question Mr. Simpson about any dispute with Ms. Wang

related to her "former ownership interest in Inovia and Mr. Simpson's and PCTfiler's desire to

remove her as a shareholder."

However, AFD USA has objected, presumably on this basis, to exhibits that relate to

matters other than the Inovia/PCT Filer dispute. AFD China's proposed Trial Exhibit 173 does

not mention any Inovia/PCT Filer dispute; instead, it simply addresses a return to Ms. Wang of

$40,000. There is further information in AFD China's Trial Exhibit 173 that does relate to the

trademark issues in this case including admissions by Ms. Wang that "Zheng Xia and I are in the

process of settling previous business issues" and "I acted as its [sic] AFD's liaison." Those

matters are relevant because AFD USA seeks to disgorge all revenues AFD China received from

---

[54] *Id*; *see also Impact Mktg. Int'l, LLC v. Big O Tires, LLC*, No. 2:10-cv-01809-MMD-VCF, 2012 WL 2092815, at *4 (D. Nev. June 11, 2012) (denying party's motion *in limine* to exclude opinion testimony regarding actual damages or lost profits because the company's business manager oversaw and had personal knowledge of the company's accounts).

Inovia/PCT Filer following termination.  As is made clear in this and other exhibits, Inovia/PCT Filer was not confused by AFD China's use of its own name and those revenues cannot be included in AFD USA's damages for trademark infringement.

## III.
## CONCLUSION

AFD China and AFD LLC respectfully request that the Court deny AFD USA's Motions in Limine and permit them to present all relevant evidence at trial.

Dated: March 14, 2014
_____/s/ Aimee Furness_____

Christopher E. Hawk, OSB #061635
Gordon & Rees LLP
121 SW Morrison Street, Suite 1575
Portland, Oregon 97204

Glenn Westreich *(Pro Hac Vice)*
Aimee Furness *(Pro Hac Vice)*
Haynes and Boone, LLP
2033 Gateway Place, Suite 300
San Jose, California 95110

ATTORNEYS FOR AFD CHINA
INTELLECTUAL PROPERTY LAW OFFICE

## <u>CERTIFICATE OF SERVICE</u>

       This is to certify that a true and correct copy of AFD China's and AFD LLC's Omnibus Memorandum in Opposition to AFD USA's Motions in Limine has been served on all counsel of record, as indicated below, on this 14th day of March, 2014.

Jack Russo                                    *<u>Via Email</u>*
Ansel Halliburton
Entrepreneur Law Group LLP
401 Florence Street
Palo Alto, California 94301


                                              */s/ Aimee M. Furness*
                                              Aimee M. Furness