IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

AFD CHINA INTELLECTUAL
PROPERTY LAW (USA) OFFICE,
INC.,

    Plaintiff,

v.

AFD CHINA INTELLECTUAL
PROPERTY LAW OFFICE,

    Defendant.

3:09-cv-1509-BR

OPINION AND ORDER

_____

AFD CHINA INTELLECTUAL
PROPERTY, LLC,

    Counterclaim Plaintiff,

v.

LEI WANG, a/k/a LYNN WANG,

    Third-Party Counterclaim
    Defendant.

1 - OPINION AND ORDER

**JONATHAN E. MANSFIELD**
Mansfield Law
121 S.W. Morrison Street
Suite 400
Portland, OR 97204
(971) 271-8615

**ANSEL J. HALLIBURTON**
Entrepreneur Law Group LLP
401 Florence Street
Palo Alto, CA 94301
(650) 327-9800

**SUSAN L. BRISTOW-FORD**
Bristow-Ford Law
522 S.W. Fifth Avenue
Portland, OR 97204
(503) 208-3554

      Attorneys for Plaintiff
      and Counterclaim Defendant

**AMY M. FURNESS**
**GLENN WESTREICH**
**INCHAN A. KWON**
Haynes and Boone LLP
2033 Gateway Place
Suite 300
San Jose, CA 95110
(408) 660-4121

**CHRISTOPHER E. HAWK**
Gordon & Reese LLP
121 S.W. Morrison Street
Suite 1575
Portland, OR 97204
(503) 222-1075

      Attorneys for Defendant
      and Counterclaim Plaintiff

**BROWN, Judge.**

This matter comes before the Court on the Bill (#369) of Costs and Motion (#372) for Attorney Fees and Non-Taxable

2 - OPINION AND ORDER

Expenses filed by Defendant AFD China Intellectual Property Law Office and Counterclaim Plaintiff AFD China Intellectual Property, LLC (collectively referred to as AFD China).

For the reasons that follow, the Court **GRANTS in part** and **DENIES in part** AFD China's Bill (#369) of Costs and **DENIES** AFD China's Motion (#372) for Attorney Fees and Non-Taxable Expenses.

## BACKGROUND

AFD USA and Lei Wang (collectively referred to as AFD USA) and AFD China were formerly associated in the business of providing intellectual-property services. Pursuant to various agreements AFD USA would locate non-Chinese clients in the United States who required intellectual-property services in China and refer those clients to AFD China to perform the Chinese intellectual-property services.

In December 2007 this business arrangement fell apart, ultimately leading AFD USA to commence this action against AFD China for trademark-infringement, unjust-enrichment, intentional interference with economic relations, and joint-venture claims. AFD China filed Counterclaims against AFD USA seeking a declaration that a particular mark (the Mark) associated with the business belonged to AFD China and also alleging unfair-competition, trademark-infringement, and alter-ego liability claims.

3  - OPINION AND ORDER

After extensive discovery and multiple rounds of discovery litigation over nearly four years, the parties filed Cross-Motions for Partial Summary Judgment (#197, 201). On July 31, 2013, the Court issued an Order (#230) denying the Cross-Motions as to the issues of ownership of the Mark (Claims One-Four) on the ground that "neither party has made the necessary showing that the pertinent, material facts are undisputed." The Court granted AFD China's Cross-Motion as to AFD USA's unjust-enrichment and intentional-interference claims (Claims Five and Six) because those claims were "subsumed by the [parties'] Cooperation Agreement." The Court also granted AFD China's Cross-Motion as to AFD USA's joint-venture claims (Claims Seven-Eleven) because AFD USA did not show "sufficient evidence from which a rational juror could find a joint venture existed."

After additional expert discovery that required further judicial intervention and which is the subject of a separate motion cycle for expert-witness fees, the Court conducted final Pretrial Conference proceedings on March 21, 2014, and March 24, 2014 (nearly five years after this matter commenced) as to the following issues that remained unresolved after the Court's summary-judgment rulings as set out in the Pretrial Order (#298):

> AFD USA's Claims against AFD China:
>
> 1. Declaratory Judgment for a declaration that AFD USA owns the "AFD" mark.
>
> 2. Trademark Infringement under the Lanham Act, 15

    U.S.C. § 1051, *et seq.*

 3. Unfair Competition under the Lanham Act.

 4. Common-Law Trademark Infringement and Unfair Competition.

<u>AFD China's Counterclaim against AFD USA</u>:

 1. Declaratory Judgment for declarations that AFD China owns the "AFD" mark and that AFD USA's registration of the "AFD" mark was obtained by fraud and is void *ab initio*.

<u>AFD China's Counterclaim against AFD USA and Counterclaim Defendant Lei (Lynn) Wang</u>:

 1. Unfair Competition under the Lanham Act.

 2. Common-Law Trademark Infringement.

<u>AFD China's Counterclaim against Wang</u>:

 1. Alter-Ego Liability.

  Like most of this case, the Pretrial Conference proceedings were fraught with unnecessary difficulty. The parties twice failed to present any viable verdict form to address the pending issues. On its own motion and in the exercise of its discretion, the Court determined it was necessary to bifurcate the jury trial to resolve first the threshold issue of "first use" of the Mark. It was only then that the parties agreed to a four-question verdict form for what would be called "Phase I" of the trial at which the evidence would be limited to those four questions.

  On March 25, 2014, this matter proceeded to trial on the Phase I first-use issue. On March 28, 2014, the jury returned a Verdict in favor of AFD China. Specifically, the jury found AFD

5 - OPINION AND ORDER

China proved by a preponderance of the evidence that AFD China made first use of the Mark in commerce.

After the Court received the Phase I Verdict, the parties agreed it was not necessary for a jury to consider the parties' remaining issues, which the parties then requested the Court to resolve on written submissions.

After considering the parties' briefing on those remaining issues, the Court issued an Order (#360) on June 12, 2014, granting in part and denying in part AFD China's Motion (#344) for Declaratory Judgment and Injunctive Relief. The Court declared AFD China is the rightful owner of the Mark and that AFD USA's previous registration of the Mark should be cancelled. The Court also declared AFD USA and Wang committed unfair-competition and trademark infringement by their use of the Mark. Notably, however, AFD China did not present any evidence of actual damages, and, accordingly, the Court only awarded $1 in nominal damages to AFD China. The Court denied AFD China's Motion as to injunctive relief because AFD China failed to carry its burden to prove that it suffered an actual, irreparable injury. Finally, the Court denied as premature AFD China's Motion (#345) for Entry of Judgment on Alter Ego Claim because there was not any evidence that AFD USA was unable to pay either the nominal damages award or any potential award of costs and attorneys' fees.

## AFD CHINA'S BILL (#369) OF COSTS

Pursuant to Federal Rule of Civil Procedure 54(d)(1) AFD China seeks $85,915.70 in costs as the prevailing party. AFD China seeks to recover $700.00 in filing fees, $165.00 in fees for the service of two subpoenas, $18,561.10 in fees for transcript copies, $10,390.48 in printing costs, $46,811.99 in copying costs, and $9,287.13 in interpreter costs.

Considering all of the prior conflicts between the parties, it is noteworthy that AFD USA objects only to $172.19 of the copying costs on the grounds that $136.61 in "in-house copying expenses" and $35.58 in "blow-backs" or "reproductions of electronic documents" are improper. The Court also notes AFD China fails to identify specifically why these disputed copying expenditures were incurred other than to speculate that they were necessary for trial preparation based on the dates of the expenditures. In short, AFD China fails to support its request for the disputed $172.19 in copying costs as required by Local Rule 54-1(a)(1)(requiring prevailing parties to provide a "detailed itemization of all claimed costs").

Accordingly, having considered the record as a whole, the Court reduces AFD China's request for costs by $172.19 and **AWARDS** costs to AFD China in the amount of **$85,743.51**.

### AFD CHINA'S MOTION (#372) FOR ATTORNEY FEES AND NON-TAXABLE EXPENSES

In its Motion for Attorney Fees and Non-Taxable Expenses AFD China seeks $1,074,963.50 in attorneys' fees and $98,112.61 in nontaxable expenses pursuant to the Lanham Act. See 15 U.S.C. § 1117(a).

### I. Standards

The Lanham Act provides: "The court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). The Lanham Act also allows recovery of expenses incurred by a party that are not taxable as costs, but are recoverable as ancillary to a statutory award of attorneys' fees under § 1117(a). Secalt S.A. v. Wuxi Shenxi Constr. Mach. Co., 668 F.3d 677, 690 (9th Cir. 2012). An award of attorneys' fees is within the court's discretion when the "exceptional-case" requirement has been met. Stephen W. Boney, Inc. v. Boney Servs., Inc., 127 F.3d 821, 825 (9th Cir. 1997). See also Octane Fitness v. ICON Health & Fitness, Inc., 134 S. Ct. 1749, 1756 (2014)(construing an identical "exceptional-case" requirement in the Patent Act as imposing "one and only one constraint on district courts' discretion to award attorney's fees in patent litigation: The power is reserved for 'exceptional' cases.").

The Lanham Act does not "define[] what makes a case 'exceptional.'" Stephen W. Boney, Inc., 127 F.3d at 825.

8 - OPINION AND ORDER

Nonetheless, the Supreme Court has held "an 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position . . . or the unreasonable manner in which the case was litigated." *Octane Fitness*, 134 S. Ct. at 1756. The Ninth Circuit has held "this requirement is met when the case is *either* 'groundless, unreasonable, vexatious, *or* pursued in bad faith.'" *Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1156 (9th Cir. 2002)(quoting *Avery Dennison Corp. v. Sumpton*, 189 F.3d 868, 881 (9th Cir. 1999))(emphasis in original). The "'exceptional circumstances' requirement [is construed] narrowly." *Classic Media, Inc. v. Mewborn*, 532 F.3d 978, 990 (9th Cir. 2008).

## II. Discussion

AFD China contends it is entitled to attorneys' fees because it is the prevailing party and this is an exceptional case. Specifically, AFD China argues AFD USA's claims were meritless as demonstrated by the Court's observation at trial that AFD China's Motion for Judgment as a Matter of Law had "a strong basis" even though the Court deferred ruling on that Motion. *See* Tr. of Proceedings (#356) at 4. In addition, AFD China argues AFD USA litigated this matter in an unreasonable manner.

Although AFD USA does not dispute AFD China was the prevailing party, it contends this is not an exceptional case because AFD USA's claims were not meritless, its "manner" of

9 - OPINION AND ORDER

litigating the case was not unreasonable in light of AFD China's "manner" of litigation, and AFD China only obtained limited relief.

### A.   Application of the Exceptional-Case Requirement

AFD China contends this is an exceptional case because AFD USA's claims were without merit and AFD USA litigated this case in a vexatious and abusive manner.

#### 1.   Substantive Reasonableness of AFD USA's Claims

To support its position that AFD USA's claims were without merit, AFD China relies on the Court's observation at trial that AFD China's Motion had a "strong basis" even though the Court ultimately deferred ruling on AFD China's Motion for Judgment as a Matter of Law. At that time the Court observed AFD China's Motion

> effectively asks me to conclude as a matter of law that there's not a jury question as to the Defendant's first use of the mark, and, in any event, as to this abandonment issue and otherwise.
>
> With a verdict looming, effectively the Defendant's motion would ask me to direct a verdict in its favor, with respect to questions 1 and 2, on the verdict form. And that's always a concerning responsibility when the parties have put so much effort into presenting a case for a jury and the jury itself has put in significant effort to understand the parties' evidence and presumably to follow the Court's instructions. So it's never something the Court undertakes lightly.
>
> And to grant this motion, would I have [sic] to have the confidence that I had in mind every factual inference that could be drawn in Plaintiff's favor. And I'm not sure I have

10 - OPINION AND ORDER

> reviewed sufficiently the evidentiary record to be able to say that I'm satisfied the motion must be granted, although the motion itself has a strong basis.
>
> So what I'm going to do for the record, at this stage of the proceedings, is simply to keep the Defendant's motions for judgment as a matter of law pending and under advisement, and I'm going to receive the jury's verdict.

Tr. of Proceedings (#373 at 4). Thus, although the Court noted AFD China's Motion had a strong basis, the Court specifically reserved ruling on AFD China's Motion because the Court was unsure at that moment whether the evidentiary record was, in fact, sufficient to grant the Motion and to take the matter away from a deliberating jury.

With the clarity of hindsight and the benefit of the Court's work in overcoming the parties' intractable positions at the Pretrial Conference, the Court now agrees with AFD China that AFD USA's case at trial was weak. Before the issues were finally narrowed at the Pretrial Conference, however, this case involved numerous complicated factual and legal theories, issues of foreign law, differing cultural expectations, and extensive, contentious discovery. Even after the parties worked through over 400,000 pages of documentary evidence, the Court, nevertheless, found a genuine dispute of material fact existed as to four of AFD USA's claims. In addition, although AFD China had the benefit of consistent counsel throughout this case, AFD USA did not. Thus, it is not clear that the ultimate weakness of AFD

11 - OPINION AND ORDER

USA's case was evident early enough in these lengthy proceedings for purposes of considering the case to be exceptional.

Accordingly, on this record the Court concludes AFD USA's ultimately unsuccessful claims were sufficiently meritorious to render this an *unexceptional* case.

### 2.  Reasonableness in the Manner of Litigation

AFD China next contends this is an exceptional case because AFD USA litigated in an abusive and unreasonable manner. AFD China asserts AFD USA unreasonably (1) litigated parallel litigation in China and California; (2) objected to bifurcation of the case; (3) extended case deadlines; (4) filed a Motion to Compel Arbitration (#84), which resulted in the Court sanctioning Wang as a result of misrepresentations to the Court; (5) filed a Motion (#106) to Compel Production of extensive documentary evidence that AFD USA did not ultimately introduce at trial; (6) untimely substituted an expert witness; (7) refused to conference on a Motion (#253) for Extension of Time; and (8) moved late in the case to file a second motion for summary judgment and motion for leave to amend its answer.

Although AFD China is correct that some of these actions by AFD USA were unreasonable, AFD China casts its stones from a glass house. Suffice to say, a similar indictment of the manner in which AFD China chose to litigate this case could be gleaned from the record. Because there is nothing to be gained

by enumerating all of AFD China's contributions to complicating the case, however, the Court declines to specify them.

In the end it appears to the Court that this action was substantially complicated and fueled and protracted by unbridled animosity between the parties, consistently poor communication between counsel, and considerable over-lawyering by all involved. In short, both parties were contributors to the unnecessary complication, expense, and length of this litigation, and the Court cannot in good conscience find the case exceptional merely because both parties engaged in mutual combat.

In light of the very large attorney-fee award that AFD China seeks, however, the Court notes some examples that illustrate the parties' mutual responsibility for complicating and prolonging this action because of their inability to confer and to reach agreement on the most fundamental issues without requiring Court intervention as well as their failures to follow the Court's orders and instructions even after Court intervention:

### a. Development of a Verdict Form

Poor cooperation between the parties substantially complicated the typically routine task of crafting a verdict form. In its Opinion and Order (#360) addressing AFD China's Motions on its alter-ego liability claim and for declaratory and injunctive relief, the Court noted:

Consistent with the long history of contentious and poor communications between counsel, the parties did a poor job setting out the issues in their pretrial documents that were to be resolved by a jury. The parties were unable to come to agreement on a jointly-proposed verdict form and instead provided the Court with five different documents containing separately-proposed, objected-to, and agreed-upon verdict questions. The parties ultimately agreed on sixteen proposed verdict questions, but disagreed on thirty-two other questions. Moreover, the parties' proposed verdict questions included element-specific interrogatories and a confusing list of multiple questions that the Court concluded would almost certainly result in inconsistent answers from a jury.

In a March 19, 2014, email to counsel the Court informed the parties that their competing proposals for a verdict form were unacceptable and requested they confer and provide another jointly-proposed verdict form for the Court's consideration before the March 21, 2014, scheduled Pretrial Conference. On March 20, 2014, the parties submitted an Amended Proposed Verdict Form (#330) that contained twenty-seven questions that included five objected-to questions. The parties stated in the Amended Proposed Verdict Form that they continued to disagree about the issues that should be tried to the jury.

Despite the fact that the parties were given a second chance to propose a suitable verdict form, they failed to cure the fundamental problems present in the first round of proposed verdict forms. For example, the parties still continued to expect the jury to track evidence on multiple, inconsistent factual theories that were contingent on resolution of the threshold question: Which party made first use of the "AFD" mark in commerce?

14 - OPINION AND ORDER

*AFD China Intellectual Prop. Law (USA) Office, Inc. v. AFD China Intellectual Prop. Law Office*, No. 3:09-cv-1509-BR, 2014 WL 2619644, at *1-*2 (D. Or. June 12, 2014).

### b. Substitution of AFD USA's Expert Witness

On August 23, 2013, AFD USA filed a Motion (#232) to Substitute Damages Expert and Disclose Confidential Documents. AFD USA filed this Motion approximately two months before the trial date; more than two months after initial expert disclosures were due; and approximately two months after AFD USA's former expert, Darrel Dorrell, resigned. After AFD China opposed the Motion, the Court held a telephone hearing on September 5, 2013. AFD USA, however, failed to develop the record sufficiently to (1) demonstrate the reasons for withdrawing its expert; (2) establish why it should be entitled to substitution of a new expert; and (3) show why, if allowed, AFD China would not be prejudiced by the new expert's analysis. Accordingly, the Court held a second hearing at which the Court granted AFD USA's Motion; struck the October 29, 2013, trial date; set a deadline of October 28, 2013, for AFD USA to produce the report of its new expert, Serena Morones; set a deadline of November 25, 2013, for Plaintiff to submit any responsive supplemental expert reports; and granted AFD China leave to move no later than November 25, 2013, for additional expert-witness costs incurred because of Plaintiff's late substitution of expert witnesses.

On November 22, 2013, AFD USA filed an Emergency Motion (#253) for Extension of Time to Extend Deadlines to Submit Rebuttal Expert Report because there was a delay in the production of the documents underlying Ms. Morones's report and because opposing counsel had allegedly willfully refused to confer. Although the parties stipulated to a briefing schedule, the Court held a telephone hearing in part to resolve counsel's inability to communicate. In that hearing the Court observed:

> I went back through the declarations filed by Mr. Russo, Mr. Halliburton, and Ms. Furness. Mr. Westreich didn't file a declaration, but there were assertions made about his view on certain of these factual disputes. The reason I think it's important to get this issue resolved is that in my experience this case has been unusual for the amount of management required by the Court because counsel have not been communicating. And when one lawyer makes an assertion that there has been a willful refusal to confer on a motion, that's a very serious matter that the parties did not even seem to take very seriously at the time it was made, including the failure by Mr. Russo and Mr. Halliburton to comply with the specific order to make an explanation, for which I had to issue two orders.
>
> So I'm quite concerned that the parties are not living up, through their counsel, to the requirements of being permitted to litigate in federal court. And this, Counsel, has got to come to a stop now.
>
> So the purpose of this part of the hearing is to air these contradictory factual assertions you've made against one another and to ensure by the end of this part of the hearing that there is in fact in place a meaningful mechanism of communication so that the Court

16 - OPINION AND ORDER

> is not required to spend one more minute managing you and, instead, we can get back to trying to get this matter resolved on the merits. A case that, by the way, now, is in its fifth year. And I am bound and determined to ensure that it gets resolved promptly, but fairly.

Tr. of Proceedings (#280) at 3-5. The Court summarized the Declarations of counsel as to the cause of this particular breakdown in communication before concluding: "This is just the tip of the iceberg. And from my experience, as I say, quite unusual. I can't think of another time I've had to have a conference like this." *Id.* at 8.

AFD China filed a Motion (#272) for Reimbursement of Expert Witness Costs seeking reimbursement of the $68,738.75 in expert costs incurred in responding to Ms. Morones's report. The Court granted that Motion in part, awarded AFD China $17,116.00 in costs incurred by AFD China in responding to Mr. Dorrell's now-withdrawn report, granted AFD China leave to renew its Motion after trial, and directed AFD China to provide evidentiary support sufficient to permit the Court to determine the amount of the additional fees that were incurred for the following purposes:

> (a) expert-witness fees that Defendants incurred to respond to the analysis of Plaintiff's former expert, Darrel Dorrell, before Plaintiff gave Defendants notice that Mr. Dorrell would no longer be serving as Plaintiff's expert;
>
> (b) expert-witness fees for services that no

17 - OPINION AND ORDER

>> longer are of any use to Defendants in light of Plaintiff's change in experts; and
>
> (c) expert-witness fees that Defendants incurred to respond to the analysis of Plaintiff's new expert, Serena Morones, which Defendants would not have incurred but for Plaintiff's late change in expert witnesses.

Order (#293) at 3 (issued Jan. 30, 2014).

Although AFD China filed a Renewed Motion (#371), AFD China did not include any additional evidentiary support from which the Court could determine the claimed expert-witness fees that were incurred as a result of AFD USA's untimely disclosure of Ms. Morones as an expert. Accordingly, the Court denied AFD China's Renewed Motion with leave to renew and once again directed AFD China to provide the necessary evidentiary support.

Unfortunately, these are but a few examples of the parties' mutual inability to cooperate with each other and to respond sufficiently to the Court's orders and inquiries

### c. AFD China's Bill of Costs

Although it did not consume as many resources as the parties' other conflicts, the dispute as to $172.19 in AFD China's Bill of Costs for $85,915.70 is yet another example of the parties' inability to resolve even the most trivial disputes without judicial intervention.

In summary, although the Court concludes this case is "exceptional" only insofar as both parties engaged in litigation tactics that unreasonably protracted and complicated this matter,

18 - OPINION AND ORDER

the Court declines to find this case exceptional within the meaning of the Lanham Act. Simply put, the Court is unwilling to reward one side for the extraordinary costs incurred as a result of both parties' unjustified conduct and litigation tactics.

Accordingly, the Court concludes AFD China is not entitled to attorneys' fees because this is not an exceptional case.[1]

**B.   Discretionary Award of Attorneys' Fees**

As noted, an award of attorneys' fees is within the court's discretion when the "exceptional case" requirement is met. See Stephen W. Boney, Inc., 127 F.3d at 825. The Court emphasizes here that even if this case satisfied the "exceptional case" requirement, the Court concludes on this record and in the exercise of its discretion that it would decline to award attorneys' fees and nontaxable expenses to AFD China for the same reasons set out above.

## CONCLUSION

Accordingly, the Court **GRANTS in part** and **DENIES in part** AFD China's Bill (#369) of Costs and **AWARDS** AFD China costs in the amount of **$85,743.51**.

---

[1] In light of this analysis, the Court concludes it is not necessary also to consider the "results obtained" when determining whether this is an exceptional case except to note that the Court agrees with AFD USA that the results AFD China obtained are wholly disproportionate to the amount of attorneys' fees that AFD China seeks to shift to AFD USA.

19 - OPINION AND ORDER

The Court **DENIES** AFD China's Motion (#372) for Attorney Fees and Non-Taxable Expenses.

IT IS SO ORDERED.

DATED this 19th day of December, 2014.

_____
ANNA J. BROWN
United States District Judge